964 F.2d 829
 INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Appellant,
v.
SYNTEX CORPORATION, Syntex (U.S.A.), Inc., Syntex
Laboratories, Inc., Syntex Agribusiness, Inc.,
Hartford Accident & Indemnity Co.,
Hartford Fire Insurance Co., Appellees.
 No. 90-2770.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 12, 1991.
Decided May 21, 1992.
 
 Marjorie H. Mintzer, New York City, argued (Marjorie H. Mintzer and Phillip C. Landrigan, New York City, Barbara W. Wallace, St. Louis, Mo., on the brief), for appellant.
 Barry S. Levin, San Francisco, Cal., argued (Barry S. Levin, San Francisco, Cal., and William L. Davis, St. Louis, Mo., on the brief) for appellees.
 Before McMILLIAN, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.
 McMILLIAN, Circuit Judge.
 
 
 1
 Insurance Company of the State of Pennsylvania ("ICSOP") appeals from a final order entered in the United States District Court for the Eastern District of Missouri dismissing without prejudice ICSOP's action for declaratory relief brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. For reversal, ICSOP argues that the district court erred in failing to consider the "exceptional circumstances" of the case as required by Colorado River Water Conservation District v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (Colorado River ), reh'g denied, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976), and Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (Moses H. Cone ). For the reasons discussed below, we affirm the order of the district court.
 
 Background
 
 2
 This case arises out of a dispute among insurance carriers over their respective obligations to provide coverage for Syntex Corporation, Syntex Laboratories, Inc. ("Syntex Labs"), Syntex (U.S.A.) Inc. ("Syntex U.S.A."), and Syntex Agribusiness ("Agribusiness") (collectively all Syntex entities are generally referred to as "Syntex") in connection with Syntex's liability resulting from environmental contamination in Eastern Missouri.
 
 Underlying Environmental Litigation
 
 3
 During the late 1970s, Northeastern Pharmaceutical & Chemical Co. ("NEPACCO") operated a chemical plant in Verona, Missouri, where dioxin, a waste product from operations at the plant, was stored on the premises. NEPACCO leased the plant from Syntex, which had acquired the facility in 1969 from Hoffman-Taff, Inc. NEPACCO arranged for disposal of the dioxin by Independent Petrochemical Corporation ("IPC"). IPC then hired Russell Bliss to carry out the disposal. Bliss disposed of the dioxin by mixing it with waste oil and other substances and spraying it as a dust suppressant at twenty-eight sites in Eastern Missouri, including the now famous town of Times Beach, Missouri. As a result, thousands of lawsuits were filed by private and governmental plaintiffs seeking recovery of personal and property damages, response costs, and remediation costs. Syntex was among the many defendants sued in these actions.
 
 
 4
 According to Syntex, it has settled over 1800 of the private actions against it, for a total of more than $22 million, leaving approximately 400 private actions still pending. Syntex has also entered into a consent decree (hereinafter "the Syntex consent decree") with the Environmental Protection Agency ("EPA") in settlement of the EPA's action under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., and the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq. United States v. Bliss, 133 F.R.D. 559 (E.D.Mo.1990) (memorandum and order granting motion by EPA and State of Missouri to enter consent decrees with Syntex and NEPACCO defendants, and entering and lodging consent decrees), amended (Jan. 3, 1991). The Syntex consent decree requires Syntex, among other things, to undertake the entire remediation and restoration of Times Beach, including installation and operation of a temporary incinerator to treat dioxin-contaminated materials from all twenty-eight sites. The EPA has estimated that the incineration alone will cost Syntex over $80 million. Syntex also agreed to pay the EPA $10 million over five years to cover additional costs associated with the remediation. Syntex claims that altogether it has already expended over $22 million in defense and settlement costs, for which it has not received reimbursement from any of its insurance carriers.
 
 Syntex's Insurance Coverage
 
 5
 ICSOP issued insurance policies to Syntex Corporation and its divisions and subsidiaries, including Syntex Labs, Syntex U.S.A., and Agribusiness, for the period from August 1970 to August 1976. These ICSOP policies apparently provided coverage in excess of primary coverage provided by policies issued to Syntex by Hartford Accident and Indemnity Co. and the Hartford Fire Insurance Company (together "Hartford"). In addition, Syntex indicates that it purchased relevant primary and excess coverage from other carriers, including but not limited to: Employers Insurance of Wausau ("Wausau"), a primary insurer for 1976 through 1984; Central National Insurance Company of Omaha ("Central National"), a first layer excess insurer for 1976 through 1984; and Evanston Insurance Company ("Evanston"), an Environmental Impairment Liability ("EIL") insurer.
 
 
 6
 Pending State Court Litigation in California
 
 
 7
 In October 1985, Hartford filed a declaratory judgment action in California state court against Syntex, Wausau, and Evanston. Hartford Accident & Indem. Co. v. Employers Ins. of Wausau, No. 847212 (Cal.Super.Ct. filed Oct. 8, 1985). In 1987, Hartford amended its complaint, adding ICSOP and Central National as defendants. Central National filed a cross-complaint naming forty more insurers who allegedly provided insurance coverage during the relevant time periods.
 
 
 8
 Also in 1987, Evanston and Syntex moved to stay the proceedings in the California litigation pending resolution of underlying claims against Syntex.[1] The California Superior Court ordered the action stayed pending further order of that court. Hartford and Central National petitioned for writ of mandate seeking relief from the stay order. On March 10, 1988, the California Court of Appeal denied the petition. Hartford Accident & Indem. Co. v. Superior Court, No. A039905 (Cal.Ct.App. March 10, 1988). ICSOP did not oppose the motion to stay the proceedings or join in the petition for writ of mandate.
 
 
 9
 In May 1990, Syntex sought leave to file a cross-complaint against an additional eight insurance carriers which had not been named in the original complaint brought by Central National, and over 100 companies that were collectively named in the original complaint as "Underwriters at Lloyds." Also in May 1990, Evanston filed a separate declaratory judgment action in California state court seeking rescission of the EIL policy it issued to Syntex. Evanston moved for consolidation of the new action with the stayed action and for termination of the stay. ICSOP appeared in the California litigation to oppose the motions by Syntex and Evanston. By that time, ICSOP had already filed its federal declaratory action in the Eastern District of Missouri; thus, ICSOP argued that the California state court should defer to the federal action. On May 8, 1990, the California state court granted Syntex's motion for leave to file the cross-complaint, consolidated the two California actions and reaffirmed the stay. Hartford Accident & Indem. Co. v. Employers Ins. of Wausau, No. 847212 (Cal.Super.Ct. May 8, 1990).
 
 
 10
 In February 1991, Syntex moved to lift the stay of the California action on grounds that changed circumstances now favored going forward. Syntex argued that the December 1990 consent decree, the settlement of a majority of the private actions against it, and the refusal of its insurers to help defray its mounting defense and settlement costs, all necessitated litigation of the coverage issues. By order dated March 27, 1991, the California state court granted Syntex's motion and lifted the stay of that action. Id. (Mar. 27, 1991).
 
 Federal Declaratory Judgment Action
 
 11
 As noted, on May 18, 1988, ICSOP filed this federal declaratory judgment action against Syntex and Hartford in the Eastern District of Missouri. Federal jurisdiction was invoked on diversity grounds. Syntex Corporation and Syntex Labs together filed a motion to dismiss for lack of personal jurisdiction. Syntex U.S.A. separately moved to dismiss on the same grounds. Agribusiness did not challenge personal jurisdiction, but moved to dismiss on grounds that (1) the district court, in its discretion, should decline to exercise jurisdiction in favor of the pending litigation in California state court, and (2) ICSOP failed to join other carriers which are indispensable to litigation over Syntex's insurance coverage. The other Syntex entities joined Agribusiness' motion in the event their motions failed. Agribusiness also moved for a stay of the action pending resolution of the underlying claims against Syntex.
 
 
 12
 In opposition to Agribusiness' motion to dismiss, ICSOP argued, among other things, that "exceptional circumstances" are not present in this case to justify federal abstention under Colorado River and Moses H. Cone. The district court, however, did not apply the "exceptional circumstances" test in Colorado River and Moses H. Cone. Instead, the district court applied the standard set forth in Brillhart v. Excess Insurance Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (Brillhart ), reh'g denied, 317 U.S. 704, 63 S.Ct. 23, 87 L.Ed. 562 (1942), and declined to exercise its discretionary jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. Deferring to the "prior-filed parallel litigation now pending in California," the district court concluded that "sound judicial discretion dictates that this action not be entertained by this Court," dismissed the case without prejudice, and denied all other pending motions as moot. Insurance Co. v. Syntex Corp., No. 88-524C(1) (E.D.Mo. Sept. 21, 1990) (Memorandum and Order). ICSOP appealed.
 
 Discussion
 
 13
 ICSOP argues that the district court, in exercising its discretion to dismiss the federal action, erroneously relied on Brillhart, without considering the exceptional circumstances test of Colorado River and Moses H. Cone. ICSOP contends that Colorado River and Moses H. Cone mandate application of the exceptional circumstances test in all cases where the basis for abstention is the promotion of wise judicial administration. ICSOP thus urges this court to reverse on grounds that the requisite exceptional circumstances are not present. We hold that the district court should have considered the Colorado River/ Moses H. Cone factors. However, applying those factors to this case, we conclude that exceptional circumstances are present and, accordingly, we affirm.
 
 
 14
 Applicability of Colorado River/Moses H. Cone Abstention
 
 
 15
 In deciding to dismiss this case in favor of the pending state court action, the district court relied on the Supreme Court's 1942 decision in Brillhart. The Brillhart decision held that federal courts have broad discretion to decline to exercise jurisdiction in actions that arise under the Declaratory Judgment Act, where a concurrent state court action is pending. The Supreme Court explained: "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." Brillhart, 316 U.S. at 495, 62 S.Ct. at 1175-76.[2]
 
 
 16
 The district court did not, however, go on to address whether, in declaratory judgment actions, Brillhart remains an exception to or is superseded by Colorado River and Moses H. Cone, both of which were decided after Brillhart. Colorado River, decided in 1976, set forth the more stringent exceptional circumstances test; Moses H. Cone, decided in 1982, reaffirmed and refined the Supreme Court's decision in Colorado River. It is now soundly established under Colorado River and Moses H. Cone that where dismissal or stay of a federal action is under consideration due to the existence of a pending parallel state court action and the federal court's interest in "wise judicial administration," the federal court has a "virtually unflagging obligation" to exercise its jurisdiction unless it can be said that the circumstances permitting the dismissal or stay are "exceptional." Colorado River, 424 U.S. at 817-18, 96 S.Ct. at 1246-47; Moses H. Cone, 460 U.S. at 15, 103 S.Ct. at 936-37. Neither Colorado River nor Moses H. Cone was a declaratory judgment action, however, and the Supreme Court has never specifically indicated whether the exceptional circumstances test does, in fact, apply to such cases.[3]
 
 
 17
 ICSOP cites Government Employees Ins. Co. v. Simon, 917 F.2d 1144 (8th Cir.1990) (GEICO ), as Eighth Circuit precedent for the proposition that the exceptional circumstances test does apply to declaratory judgment actions. GEICO was an appeal from summary judgment entered by the District Court for the Western District of Missouri in a declaratory judgment action involving insurance coverage issues arising out of an automobile accident. An action involving the same issues was pending in Missouri state court at the time the federal declaratory judgment action was brought. The appellant argued, among other things, that the district court erred in refusing to abstain in favor of the state court proceedings. On appeal, this court applied the Colorado River/ Moses H. Cone exceptional circumstances test and held that the district court below had not abused its discretion by refusing to abstain. Id. at 1150.
 
 
 18
 Although the GEICO decision does not specifically address the relationship between Brillhart and Colorado River/ Moses H. Cone in the context of declaratory judgment actions, it is persuasive in this instance. Furthermore, we agree with ICSOP's argument that Brillhart is cited in Colorado River as support for the exceptional circumstances test, not as an exception to it. Colorado River, 424 U.S. at 818, 96 S.Ct. at 1246-47. Thus, we hold that the Colorado River/ Moses H. Cone exceptional circumstances test applies to actions brought in federal court under the Declaratory Judgment Act, where diversity is the basis for federal jurisdiction, and abstention is considered on grounds that wise judicial administration favors deference to a concurrent state court action. Accord Lumbermens Mut. Cas. Co. v. Connecticut Bank & Trust Co., 806 F.2d 411, 413-14 (2d Cir.1986) (Lumbermens Mutual ).
 
 
 19
 Application of Colorado River/Moses H. Cone Doctrine
 
 
 20
 In Colorado River, the Supreme Court identified four factors to be considered in determining whether exceptional circumstances exist: (1) whether either court has assumed jurisdiction over a res, (2) the inconvenience of the federal forum, (3) the desirability of avoiding piecemeal litigation, and (4) the order in which the courts obtained jurisdiction. 424 U.S. at 818, 96 S.Ct. at 1246-47. In Moses H. Cone, the Court added the following factors: (5) whether state or federal law controls, and (6) the adequacy of the state forum to protect the parties' rights. 460 U.S. at 23, 26, 103 S.Ct. at 941, 942. "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." Colorado River, 424 U.S. at 818-19, 96 S.Ct. at 1247. This careful balance of factors is to be "heavily weighted in favor of the exercise of jurisdiction," Moses H. Cone, 460 U.S. at 16, 103 S.Ct. at 937, and "[o]nly the clearest of justifications will warrant dismissal." Colorado River, 424 U.S. at 819, 96 S.Ct. at 1247.
 
 
 21
 In this case, the balance tips in favor of dismissal, even considering the district court's weighty obligation to exercise federal jurisdiction. In an insurance coverage dispute involving multiple carriers, multiple layers of insurance, and multiple overlapping terms of coverage, the desire to avoid piecemeal litigation is particularly compelling. On this point, we agree with the Second Circuit's reasoning in Lumbermens Mutual:
 
 
 22
 The critical factor ... is the desirability of avoiding piecemeal litigation and the possibility of two interpretations of the same policy language in different courts, leaving the insured possibly with insufficient coverage from the insurers after years of paying premiums.... [T]he avoidance of piecemeal litigation should be given great weight in the context of declaratory judgment actions because such litigation would complicate and fragment the trial of cases and cause friction between state and federal courts.
 
 
 23
 806 F.2d at 414 (citations omitted).
 
 
 24
 Syntex argues that the federal court litigation in Missouri will most likely lead to piecemeal litigation because a number of Syntex's excess carriers are not parties to this action.[4] ICSOP argues that Syntex has neither sought funding for its defense and indemnity costs from any of these so-called "high level excess carriers," nor could it at this point because claims against them have not ripened. Thus, ICSOP argues, it is both disingenuous and mistaken for Syntex to suggest that dismissal of this federal action is appropriate because these carriers are absent. We disagree. "In an insurance coverage dispute such as is here involved, the interest of an insured in binding as many of its insurers as possible to a single adjudication is a factor strongly weighing in favor of maintenance of an inclusive action." Id. at 415. Accordingly, dismissal of the federal court litigation, in favor of the concurrent comprehensive state court litigation, was appropriate.
 
 
 25
 Although the remaining factors under Colorado River/ Moses H. Cone are relatively less important in this particular case, we note that some of them also weigh in favor of finding exceptional circumstances and, therefore, abstaining. For example, the California court was the first to obtain jurisdiction and that court is better able to protect the rights of the parties because all of Syntex's insurance carriers are parties to that litigation. See Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d 475, 477 (1st Cir.1985) (affirming stay of federal action under Colorado River/ Moses H. Cone, in favor of state court action, to avoid piecemeal litigation and the possibility of divergent interpretations of insurance policy language, and where state court action was filed first and involved all insurers as parties).
 
 
 26
 ICSOP argues that the federal district court should have exercised jurisdiction because, among other reasons, the Missouri federal forum is relatively more convenient than the California state forum. ICSOP's argument is based on the facts that the underlying dioxin contamination occurred in Missouri, and the EPA litigated related CERCLA and RCRA claims against Syntex in the same federal district court, thus making that court intimately familiar with the underlying facts. In response, Syntex emphasizes that the present litigation involves insurance coverage disputes and thus many of the relevant witnesses and documents are located in California, where the insurance policies were purchased.
 
 
 27
 ICSOP also argues that Missouri rather than California law applies to the coverage issues and therefore the Missouri federal district court is the more appropriate court in which to litigate these claims. Syntex argues that California law applies.
 
 
 28
 We decline to reach the issue of which state's law applies, as we find it unnecessary. We hold that neither the relative convenience of the fora, nor the choice between Missouri and California law, counsels against the district court's dismissal of the federal action. The Missouri federal district court is not necessarily more convenient than the California state court, and there is no reason to assume that the California court would be unable to make a correct choice of law determination and, if necessary, apply Missouri law to the comprehensive action before it.
 
 
 29
 In sum, we hold that the district court did not abuse its discretion in granting Synex's motion to dismiss, even though it failed to apply the Colorado River/ Moses H. Cone exceptional circumstances test.
 
 
 30
 Accordingly, the order of the district court is affirmed.
 
 
 31
 FLOYD R. GIBSON, Senior Circuit Judge, concurring in result:
 
 
 32
 I concur in the result, and in the majority's opinion insofar as it decides Colorado River would not have required the district court to retain jurisdiction of this case. However, I do not join in the majority's conclusion that the district court's discretion to dismiss this declaratory judgment action was limited by Colorado River.
 
 
 33
 The majority correctly points out that neither Colorado River nor Moses H. Cone involved the Declaratory Judgment Act; this inherently and automatically limits their applicability to this case. Furthermore, the rationale supporting Colorado River indicates it does not limit the district court's discretion in declaratory judgment actions. Colorado River created an exception to the district court's otherwise "unflagging obligation" to exercise jurisdiction. Moses H. Cone, 460 U.S. at 14-15, 103 S.Ct. at 936-37. In that sense, Colorado River is strikingly similar to a fourth abstention doctrine. GEICO, 917 F.2d at 1147-48 & n. 2. Once jurisdiction is proper, and once it is determined that none of the "four" abstention doctrines apply, it is still within the district court's discretion to decline to award relief under the Declaratory Judgment Act. Brillhart, 316 U.S. at 494, 62 S.Ct. at 1175;[5] see also 28 U.S.C. § 2201 (1988) ("in a case of actual controversy within its jurisdiction, ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration....") (emphasis added). In other words, it appears that Colorado River and Moses H. Cone deal with exceptions to jurisdiction and are really not relevant to a district court's discretionary authority under the Declaratory Judgment Act. Similarly, GEICO is not precisely on point because there the district court decided it would exercise its jurisdiction under Brillhart, and the appellant's challenge was based not on the exercise of that discretion, but rather on the court's conclusion that Colorado River did not require it to decline jurisdiction over the case. GEICO, 917 F.2d at 1147. I believe the Third Circuit's view that "the traditional discretion of the federal courts to decide whether to hear declaratory judgment cases is not limited by Colorado River and Moses H. Cone, but will be subject to the 'liberal interpretation' to be accorded the Declaratory Judgment Act," United States v. Commonwealth of Pennsylvania, Department of Environmental Resources, 923 F.2d 1071, 1074 (3d Cir.1991), is correct. I would simply affirm the district court on the ground that it was within its discretion to decline to award relief under the Declaratory Judgment Act, and that it did not abuse its discretion.
 
 
 
 [1]
 According to Syntex, the motion to stay the California litigation was based upon the argument that because the insurers intended to prove that Syntex had "expected or intended" to injure the liability plaintiffs, and had concealed material evidence from the insurers at the time it purchased the policies, the liability plaintiffs should be allowed to litigate the issues of Syntex's knowledge and intent first
 
 
 [2]
 The district court also relied upon the Eighth Circuit's decision in United States Fidelity & Guar. Co. v. Millers Mut. Fire Ins. Co., 396 F.2d 569, 571 (8th Cir.1968) (Millers Mutual ). However, Millers Mutual does not alter our analysis of this issue because it also predates Colorado River and Moses H. Cone
 
 
 [3]
 Several other circuits have addressed this precise question, without consensus. Compare Mitcheson v. Harris, 955 F.2d 235 (4th Cir.1992) (Colorado River exceptional circumstances test does not govern exercise of diversity jurisdiction in declaratory judgment actions); Continental Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1369 (9th Cir.1991) (Colorado River test does not apply where the Declaratory Judgment Act is involved); Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1222 (3d Cir.1989) (Colorado River inapplicable to declaratory judgment actions based on terms of the Declaratory Judgment Act and nature of such actions); and Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 601 n. 1 (5th Cir.1983) (remedial and equitable nature of declaratory judgments vests the court with discretion, and sets declaratory judgments outside the scope of Moses H. Cone) with Lumbermens Mut. Cas. Co. v. Connecticut Bank & Trust Co., 806 F.2d 411, 413-14 (2d Cir.1986) (Colorado River exceptional circumstances test applies to declaratory judgment actions) ( citing Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d 475 (1st Cir.1985) (applying Colorado River/Moses H. Cone to declaratory judgment action involving insurance coverage issues))
 
 
 [4]
 ICSOP apparently did not and cannot name many of Syntex's insurers because their citizenship would destroy diversity jurisdiction
 
 
 [5]
 Interestingly, the district court in Brillhart apparently declined to exercise its discretion under the Declaratory Judgment Act because there was a pending state case. Brillhart, 316 U.S. at 493-94 & n. 1, 62 S.Ct. at 1174-75 & n. 1. I do not believe the Colorado River Court intended to overrule Brillhart sub silentio