**FEDERATED RURAL ELECTRIC INSURANCE CORPORATION,**
Appellant,

v.

**ARKANSAS ELECTRIC COOPERATIVES,**
INC., Appellee.

**ARKANSAS ELECTRIC COOPERATIVES,**
INC., Appellee,

v.

**FEDERATED RURAL ELECTRIC INSURANCE CORPORATION,**
Appellant.

No. 94–2342.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1994.

Decided Feb. 16, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied March 27, 1995.

Jim L. Julian, Little Rock, AR, argued for appellant.

Charles L. Schlumberger, Little Rock, AR, argued for appellee.

Before MAGILL and BEAM, Circuit Judges, and SHANAHAN,* District Judge.

MAGILL, Circuit Judge.

Federated Rural Electric Insurance Corp. (Federated) appeals the district court's order staying its suit against Arkansas Electric Cooperatives, Inc. (AECI) until a state court suit between the same parties has been resolved. Federated argues that the district court abused its discretion by granting the stay because it failed adequately to consider the factors involved in defining the "exceptional circumstances" required for application of the *Colorado River–Moses H. Cone* abstention[1] doctrine. We agree, and therefore reverse and remand to the district court.

* THE HONORABLE THOMAS M. SHANAHAN, United States District Judge for the District of Nebraska, sitting by designation.

1. Although the Supreme Court has refused to characterize this doctrine as an abstention doctrine, *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 815, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976), the doctrine is commonly

## I. BACKGROUND

This case arises from a dispute over whether the insurer or the insured is required to pay for environmental cleanup costs under a series of comprehensive general liability (CGL) insurance policies. AECI is an Arkansas corporation that purchased a series of yearly CGL policies from Federated, a Wisconsin corporation, from 1971 to the present.[2] These policies contain a clause that obligates Federated to "pay on behalf of [AECI] all sums which [AECI] shall become obligated to pay as damages." This circuit has held that clauses of this type do not obligate the insurer (Federated) to pay cleanup costs under CERCLA or RCRA. *Continental Ins. Cos. v. Northeastern Pharmaceutical & Chem. Co.*, 842 F.2d 977 (8th Cir.) (en banc), *cert. denied,* 488 U.S. 821, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988) (*NEPACCO* ). The issue in this appeal arises because the parties have attempted to choose a forum for their litigation based upon whether or not it applies *NEPACCO.* J.A. at 382.

In July 1988, AECI received notice from the EPA that it might be a potentially responsible party in connection with a removal action sponsored by the EPA in Saline County, Arkansas. AECI gave notice to Federated and made a demand under the CGL insurance policies. Federated informed AECI that environmental remediation costs were not covered by any of the policies. The EPA eventually named AECI as a potentially responsible party, and AECI ultimately entered into an Administrative Order on Consent obligating it to pay environmental response costs that totalled approximately $565,000 in November 1992. In February 1993, Federated formally denied coverage of the environmental response costs under the policies. This denial of coverage triggered the filing of three lawsuits.

referred to as an abstention doctrine. *See 17A Wright, Miller & Cooper, Federal Practice & Procedure* § 4247 (1982 & Supp.1994). For the sake of simplicity, we will abide by this colloquialism.

2. AECI has a principal place of business in Arkansas, and Federated has a principal place of business in Kansas.

The first action was filed by AECI in Saline County Circuit Court in July 1993. Apparently aware of the diversity of citizenship that existed between the parties to the lawsuit, AECI split its cause of action in an attempt to prevent removal of the suit to federal court (and application of *NEPAC-CO* ).[3] The suit was styled as a claim for damages arising from Federated's refusal to provide coverage under a single CGL policy that covered the period between October 1, 1976, and October 1, 1977, generating damages that were less than the $50,000 jurisdictional amount required by 28 U.S.C. §§ 1332 and 1441(a). Apparently seeking application of *NEPACCO,* Federated attempted to remove the case to district court. AECI predictably moved to remand, and AECI's motion was granted because the case did not involve a claim that satisfied the jurisdictional amount. In January 1994, AECI filed a motion for partial summary judgment in the Saline County action, which Federated opposed partly on the basis that it needed to conduct further discovery. At the July 26 summary judgment hearing, the Saline County court stayed proceedings pending the Arkansas Supreme Court's decision in *Grantors to the Diaz Refinery PRP Committee Site Trust v. Sentry Insurance,* No. 94–00027. The *Diaz Refinery* case involves the same "as damages" interpretation issue, but has been temporarily stayed. It is not unlikely that this temporary stay will effectively become permanent, as the only remaining appellee in *Diaz Refinery* is currently in receivership.

Federated was quite naturally disturbed by these developments in the Saline County action, since they created a risk of liability on the CGL policies that would be highly unlikely if the policies were adjudicated in federal court. Since the Saline County action involved only one policy, and there were still several outstanding policies (and over $500,000 of potential cleanup cost liability), Federated filed a second action in federal district court in December 1993. This action sought declaratory judgment that Federated had no liability for cleanup costs under any of the policies other than the 1976–77 policy involved in the Saline County action.

Not to be outdone, on January 5, 1994, AECI served Federated with a complaint that was filed on October 11, 1993, in the Pulaski County Circuit Court. This action involved several policies other than the 1976–77 policy. AECI's motion for partial summary judgment on the "as damages" issue (and others) and a motion to dismiss, or in the alternative, to abstain, accompanied this complaint. Federated removed this action to district court and consolidated it with its pending federal action. Federated also counterclaimed, seeking a declaration that it had no liability under any policy (including the 1976–77 policy). The result of all this procedural wrangling was that the consolidated actions in district court came to involve all policies issued by Federated to AECI. The Saline County action, which was the only other independent action, involved only the 1976–77 policy. Federated opposed AECI's motions and filed a cross-motion for summary judgment based on *NEPACCO.* In an order that was highly critical of *NEPACCO,* but that did not once mention *Colorado River, Moses H. Cone,* or any of the relevant factors, the district court granted AECI's motion to abstain. The district court did not rule on any of the remaining motions. Federated timely appealed.

## II. DISCUSSION

### A. Abstention

 We review the district court's decision to stay the federal proceedings for abuse of discretion. *Moses H. Cone Memorial Hosp. v. Mercury Constr.,* 460 U.S. 1, 19, 103 S.Ct. 927, 938–39, 74 L.Ed.2d 765 (1983); *United States Fidelity & Guar. Co. v. Mur-*

---

**3.** Our decision in *NEPACCO* was based upon Missouri state law, 842 F.2d at 985, 987, and we have construed Arkansas law in a similar manner. *Grisham v. Commercial Union Ins. Co.,* 951 F.2d 872, 875 (8th Cir.1991); *Parker Solvents Co. v. Royal Ins. Cos. of Am.,* 950 F.2d 571, 572 (8th Cir.1991) (per curiam). However, *Grisham* and

*Parker Solvents* noted that there was no Arkansas law on point. *Grisham,* 951 F.2d at 875; *Parker Solvents,* 950 F.2d at 572. Apparently AECI was willing to "roll the dice" in Arkansas state court rather than to face the virtual certainty of defeat under *NEPACCO* in federal court.

*phy Oil USA,* 21 F.3d 259, 263 (8th Cir.1994) (*USF & G*). However, the discretionary nature of the decision whether to abstain does not mean that the decision to abstain can be made "as a matter of whim or personal disinclination." *USF & G,* 21 F.3d at 261 (quoting *Public Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581–82, 7 L.Ed.2d 604 (1962) (per curiam)). The federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conserv. Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1248, 47 L.Ed.2d 483 (1976). This obligation does not evaporate simply because there is a pending state court action involving the same subject matter. *Id.* at 813–14, 817, 96 S.Ct. at 1244–45, 1246. Nor does the potential for conflict justify the staying of the exercise of federal jurisdiction. *Id.* at 816, 96 S.Ct. at 1245–46. Rather:

> [a]bdication of the obligation to decide cases can be justified under [the abstention] doctrine[s] only in the *exceptional circumstances* where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Moses H. Cone,* 460 U.S. at 14, 103 S.Ct. at 936 (quoting *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244) (internal quotation and citation omitted) (emphasis added).

Determination of the existence of "exceptional circumstances" requires evaluation of several factors (the *Colorado River/Moses H. Cone* factors), as follows:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*USF & G,* 21 F.3d at 263. These factors are not intended to be exhaustive, nor are they to be mechanically applied. Rather, they are to be pragmatically applied in order to advance the "clear federal policy" of avoiding piecemeal adjudication. *Moses H. Cone,* 460 U.S. at 16, 21, 103 S.Ct. at 937, 939–40.

■ In examining these factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937. And:

> we emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist "exceptional" circumstances, the "clearest of justifications," that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.

*Moses H. Cone,* 460 U.S. at 25–26, 103 S.Ct. at 942 (emphasis in original). Bearing these instructions in mind, we turn to the *Colorado River/Moses H. Cone* factors to determine whether this case presents "the clearest of justifications [that alone] will warrant" abstention. *Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247.

## 1. Is there a res over which one court has established jurisdiction?

This declaratory judgment action is an in personam action that does not involve a res. Accordingly, this factor does not weigh into the "exceptional circumstances" calculation.

## 2. Is there any inconvenience of the federal forum?

The parties agree that there is no appreciable difference in the level of inconvenience between the two fora. Thus, this factor is also irrelevant to the existence of exceptional circumstances.

## 3. Will maintaining separate actions result in piecemeal litigation?

The Supreme Court cases make it clear that this is the predominant factor. *See, e.g., Moses H. Cone,* 460 U.S. at 16, 21, 103 S.Ct. at 937, 939–40. The policies underlying *Colorado River* abstention are "considerations of

'[w]ise judicial administration,' giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952)).[4] Our cases have advanced this policy by favoring the most complete action. *See, e.g., USF & G*, 21 F.3d at 263 (state action, unlike federal action, included "all parties in a declaratory judgment action involving multiple insurers and overlapping coverage" and federal action stayed)[5]; *Employers Ins. of Wausau v. Missouri Elec. Works*, 23 F.3d 1372, 1375 (8th Cir.1994) (in dispute with two insurers, federal action against one insurer stayed to allow state action involving both insurers to proceed).

As we noted in a similar case, "the interest of an insured in binding as many of its insurers as possible to a single adjudication is a factor strongly weighing in favor of maintenance of an inclusive action." *Insurance Co. of the State of Penn. v. Syntex*, 964 F.2d 829, 834–35 (8th Cir.1992). The same principle that led us in *Syntex* to disapprove of the strategic omission of nondiverse insurers to create diversity applies with equal force to the strategic splitting of a cause of action by omitting policies to defeat diversity.[6] Just as we found that the inclusive action (the state action) should go forward in *Syntex*, we find that the inclusive action (the federal action) should now proceed. The federal action can resolve issues relating to all the CGL policies, whereas the Saline County action can only resolve issues relating to one policy. We conclude that the issuance of a stay in the federal action will do nothing to reduce piecemeal litigation. In fact, it will have the opposite effect. Accordingly, we believe that the policy of avoiding piecemeal litigation heavily weighs against abstention.

## 4. Which case has priority?

The Saline County action was filed by AECI on July 13, 1993. The federal district court action was filed by Federated on December 6, following remand of the Saline County action. The third action (that is now consolidated with the December 6 action) was filed on October 11, 1993, in the Pulaski County Circuit Court, and Federated was served on January 5, 1994. Although the chronology indicates that the Saline County suit was initiated a few months prior to the federal suit, "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 940; *see, e.g., USF & G*, 21 F.3d at 263 (state suit had priority despite its filing "a few months" after federal suit because state suit made more progress, "in part ... because of the District Court's stay order").

In terms of the progress made in the respective actions, we believe that the federal action has made essentially as much progress as the state action. The Saline County action was stayed pending resolution of the removal and remand dispute, so it did not begin to proceed until October 1993. In

**4.** Because the policy underlying *Colorado River* abstention is judicial efficiency, this doctrine is substantially narrower than are the doctrines of *Pullman, Younger* and *Burford* abstention, which are based on "weightier" constitutional concerns. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

**5.** AECI's heavy reliance upon our recent decision in *USF & G*, 21 F.3d 259 (8th Cir.1994), is misplaced. Rather than counseling in favor of abstention as AECI argues, *USF & G* counsels against it. The facts of *USF & G*, while superficially similar to those involved here (factors 1, 2, and 5 weigh essentially the same in both cases), were actually quite different. In *USF & G*, the state court action was comprehensive, whereas the federal action was not, thus reversing the weight of the pivotal factor 3 and affecting factor 6. Also in *USF & G*, the state action had also made more real progress, so that factor 4 weighed differently. In light of these differences, we have no difficulty reconciling the result of that case with our disposition of this appeal.

**6.** AECI argues that Federated is responsible for any piecemeal litigation because Federated could have, but did not, counterclaim in the Saline County suit. There are two simple answers to this argument. First, this problem would not exist if AECI had not split its cause of action to defeat diversity. Second, given AECI's transparent attempt to forum-shop, Federated can hardly be faulted for attempting to exercise its right to obtain global resolution of the issues in federal court.

January 1994, AECI filed a motion for partial summary judgment in the Saline County action, which Federated opposed partly on the basis that it needed to conduct further discovery. Moreover, at the July 26 summary judgment hearing, the Saline County court stayed proceedings concerning the "as damages" issue pending the Arkansas Supreme Court's decision in *Diaz Refinery*. There has been some subsequent discovery in the Saline County case and summary judgment was denied on some issues, but in essence, the Saline County action remains in the discovery phase. The federal action, by contrast, is capable of final resolution under *NEPACCO* without any additional discovery. Thus, we believe that the Saline County action does not have priority over the federal action.

### 5. Does state or federal law control?

It is undisputed that this action·is governed by state law. However, the presence of state law issues will weigh in favor of abstention only in rare circumstances. *Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942. This court has recently held that the issue of whether environmental cleanup costs are a type of "damages" covered by a standard form CGL policy is one of these rare circumstances. *Employers Ins.,* 23 F.3d at 1376. Assuming for the sake of argument that the *Employers Insurance* analysis applies with equal force to this case, we find that the pendency of the *Diaz Refinery* case before the Arkansas Supreme Court eliminates any potential weight of this factor in favor of abstention.

The district court may easily await the pending decision of the Arkansas Supreme Court. *See Wright, Miller & Cooper, Federal Practice & Procedure* § 4246 (1982 & Supp.1994) ("[T]here is no problem if a federal court merely postpones decision for a time to await an opinion of the state court in an action already pending."). Thus, we believe that the fact that state law governs this case does not provide a reason for abstention.

This factor cannot be afforded any significant weight.

### 6. Is the state forum adequate to protect the federal plaintiff's rights?

Because the Saline County action is capable of deciding issues involving only one policy, it is inadequate as a forum for the resolution of issues common to all the policies. Resolution of the common issues would require each policy to be litigated individually, or at least would require a second action analogous to the action filed by Federated. Aside from the effect that AECI's strategy has on "piecemeal" litigation, the state court litigation over an individual "piece" is plainly inadequate to protect Federated's rights which involve "the whole pie." Thus, the inadequacy of the state forum weighs in favor of allowing the federal action to proceed.

Finally, we note an additional aspect of this analysis not specifically included as a factor: whether the federal or state suit is filed as for a vexatious, reactive or tactical reason. *See Moses H. Cone,* 460 U.S. at 17, 103 S.Ct. at 937; *Nakash v. Marciano,* 882 F.2d 1411, 1416–17 (9th Cir.1989); 17A *Wright, Miller & Cooper, Federal Practice & Procedure* § 4247 nn. 72.1 & 72.2 (Supp. 1994). We need not decide whether Federated's choice of a federal forum is motivated by forum-shopping (we suspect that it was), for it is sufficiently clear that AECI's attempts to remain in state court were motivated by a desire to avoid *NEPACCO*. Moreover, it appears that much of the progress that has been made in the state actions has been due to the reactive tactics of AECI.[7] In light of AECI's hands which were soiled during its forum-shopping spree, we are disinclined to view its request for abstention as anything more than a continuation of its forum selection strategy.

From our analysis of·these factors we glean the following: Factors 1 and 2 are irrelevant and do not weigh into the calculation. Factors 4 and 5, although relevant, do not have any weight either for or against

7. AECI requested an extension of time in which to answer Federated's federal declaratory judgment complaint. It appears that AECI used this extension to amend and serve the Pulaski County complaint and to file motions for partial summary judgment in both the Saline and Pulaski County actions.

abstention. Factors 3 and 6 weigh against abstention. In light of our analysis of the factors, we think it safe to say that this case hardly presents "the clearest of justifications [that alone] will warrant" abstention. *Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247. Accordingly, we are convinced that the district court abused its discretion when it concluded to the contrary.

## B. Summary Judgment

■ AECI argues that this court lacks jurisdiction over the summary judgment aspect of this appeal because (1) the district court entered no order denying Federated's motion; and (2) any de facto denial of Federated's motion is not an appealable final judgment.[8] There is a superficial plausibility to AECI's arguments. However, AECI ignores the fact that the jurisdiction of this court is predicated upon the order granting the motion to abstain, which in these circumstances is an appealable order. Such jurisdiction having been conferred, we are free to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully before [us] for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." *Morgan Guar. Trust Co. of NY v. Martin,* 466 F.2d 593, 599–600 (7th Cir.1972) (quoting 28 U.S.C. § 2106).

■ The facts of this case are simple, and the parties agree that there is no issue of material fact. J.A. at 149, 218–19. Federated's motion for summary judgment presents a question of law as to which the position of this circuit is well established. Federated asks for summary judgment that the "as damages" clause in the CGL policies does not include environmental response costs. In *NEPACCO,* we held that, as a matter of Missouri law, an identical clause did not obligate the insurer to pay environmental response costs. 842 F.2d at 985–87. In *Grisham* and *Parker Solvents,* we noted the ab-

sence of Arkansas law on the issue. We reasoned that Arkansas insurance law was similar to Missouri law, and therefore we predicted that the Arkansas Supreme Court would follow *NEPACCO. Parker Solvents,* 950 F.2d at 571–72; *Grisham,* 951 F.2d at 874. We note that there are now conflicting Arkansas Circuit Court decisions on the "as damages" issue and that the issue is on appeal to the Arkansas Supreme Court in *Diaz Refinery.* However, *Diaz Refinery* has been stayed and its future is uncertain. We think it wise to await the authoritative resolution of this issue if a decision in *Diaz Refinery* is forthcoming. Accordingly, we remand this case to the district court with instructions that the district court shall decide whether to await the Arkansas Supreme Court's decision in *Diaz Refinery.* If the decision appears to be forthcoming, the district court shall decide the summary judgment motions according to the Arkansas law as declared in *Diaz Refinery.* If the district court in its discretion determines that the Arkansas Supreme Court may fail to resolve the issue, the district court is to apply *NEPACCO* and grant summary judgment to Federated.

## III. CONCLUSION

Because the district court failed adequately to consider the factors enunciated by the Supreme Court when the district court granted the stay of the federal proceedings, we hold that the district court abused its discretion by granting the stay. Accordingly, we remand this case to the district court with instructions that it is to determine whether to await the Arkansas Supreme Court's decision in *Grantors to the Diaz Refinery PRP Committee Site Trust v. Sentry Insurance,* No. 94–00027. If the Arkansas Supreme Court decides *Diaz Refinery,* the district court is to decide the summary judgment motions according to the Arkansas law as declared in *Diaz Refinery.* If the district court decides not to await the decision of the Arkansas Supreme Court, it is to apply

---

8. AECI also makes a due process argument. We have carefully reviewed this argument and find it to be without merit. AECI filed a cross-motion for partial summary judgment that presents its

argument that the "as damages" clause includes environmental response costs. J.A. at 160–75. This is adequate opportunity to respond.

*NEPACCO* and grant summary judgment to Federated.