**CLAY REGIONAL WATER, Plaintiff,**

v.

**CITY OF SPIRIT LAKE, IOWA, Defendant.**

**No. C01–4100–MWB.**

United States District Court, N.D. Iowa, Western Division.

April 4, 2002.

Louis T. Rosenberg, Michael A. Gershon, San Antonio, TX, Stephen F. Avery, Christopher A. Bjornstad, Cornwall, Avery, Bjornstad, Scott, Spencer, IA, for the District.

Gregg L. Ownes, Ladegaard, Maahs & Owens, Spirit Lake, IA, for the City.

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO ABSTAIN FROM JURISDICTION**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ........................................................ 1131
 A. *The Parties And The Underlying Dispute* ......................... 1131
 B. *The State And Federal Court Lawsuits* ........................... 1132
 1. *The state court action* ..................................... 1132
 2. *The federal court action* .................................. 1133

II. *DISCUSSION* ......................................................... 1134
 A. *The District Court's Virtually Unflagging Obligation* ............ 1134
 B. *Exceptions To The General Rule* ................................. 1134
 C. *Standard Of Discretion:* Colorado River *or* Brillhart? ......... 1137
 1. *Parallel proceedings* ...................................... 1137
 2. *Essence of the District's complaint* ....................... 1138
 D. Brillhart *Abstention* .......................................... 1145

III. *CONCLUSION* ........................................................ 1155

## I. INTRODUCTION

This matter is before the court on the defendant's Motion (1) To Dismiss Or Stay Based On Abstention From Jurisdiction, Or, In The Alternative, (2) To Strike Unnecessary And Inappropriate Matters From Plaintiff's Complaints. (Doc. No. 8). The defendant requests that this court abstain from exercising jurisdiction over the plaintiff's federal causes of action on the ground parallel litigation is presently advancing in state court, arguing that the plaintiff's federal lawsuit is a duplicitous attempt to oust the state court of the opportunity to decide the matter. The plaintiff resists the defendant's motion and argues that the state and federal lawsuits are not parallel; according to the plaintiff, the state court action will merely decide a simple question of state contract law, which will not resolve future disputes between the parties and will not adequately address the plaintiff's federally guaranteed rights.

### A. The Parties And The Underlying Dispute

The plaintiff, Clay Regional Water (the "District"), is a rural water district, organized and incorporated pursuant to Iowa Code chapter 357A. The defendant, City of Sprit Lake, Iowa (the "City"), is a municipal corporation created under the laws of the State of Iowa.[1]

In 1990, the parties entered into a contact, the validity of which the District put

---

1. The parties did not request oral arguments on this motion. They did, however, submit well-researched and thorough briefs. In its motion, the District was represented by Louis T. Rosenberg and Michael A. Gershon of Louis T. Rosenberg P.C., San Antonio, Texas, as well as by local counsel Stephen F. Avery and Christopher A. Bjornstad of Cornwall Avery Bjornstad Scott, Spencer, Iowa. The City was represented by Gregg L. Owens of Ladegaard, Maahs & Owens, Spirit Lake, Iowa.

in issue in the pending state court action. The contract[2] is titled "New Water Service Plan for Property Within Two Miles of the City of Spirit Lake, Iowa (East Lake Okoboji Project)" and establishes the property the District can service in the event the City annexes land. According to the City's state court petition, the City indeed annexed the land contemplated in the contract and claims that the District does not have the exclusive right to provide water services to the annexed property. Instead, the City argues that it, not the District, may provide water services to the annexed property pursuant to the express provisions of the contract.

## B. The State And Federal Court Lawsuits

### 1. The state court action

The City filed the state court action on May 23, 2001. In this lawsuit, the City requests a declaratory judgment that it may provide water services to the land annexed by the City in the area contemplated by the contract. In its state court petition, the City seeks the following relief:

> Wherefore, Plaintiff, City of Spirit Lake, Iowa, prays the Court to declare and construe the rights and duties of the parties under the contract; that the Court reserve jurisdiction to award supplementary relief, either because defendant violates the contract after its construction by the Court, or does any act pending the trial which turns out to be such a violation. Also to adjudge that Plaintiff has the right hereafter to sue at law for past or future damages from any violation of the contract as herein construed; and for such other relief as may

be appropriate to adjudge and declare the rights of the parties herein.

Def.'s Exh. A, at 2 (State Court Petition).

The District answered the City's petition on June 19, 2001. It filed an amended answer on July 3, 2001. In both the initial and the amended answers, the District denied both the validity and the enforceability of the contract on several grounds. Namely, the initial and amended answers share five common defenses. First, the District contends the City failed to satisfy conditions precedent to the District's obligation to perform. Specifically, the District claims that the agreement was not approved by the Farmers' Home Administration ("FmHA"),[3] thus making the contract void. In arguing failure of a condition precedent, the District relies on the contractual provision that provides: "This agreement is subject to Farmers' Home Administration's approval and Clay County Rural Water District will not provide service to any area under this agreement until this agreement is approved by the Farmers' Home Administration." Def.'s Exh. A (State Court Petition, at ¶ 5). The District denies that the FmHA approved the 1990 contract.

Second, the District asserted the affirmative defense that the contract is void as against public policy embodied in 7 U.S.C. § 1926(b). Third, the District asserted the defense of estoppel. Fourth, the District asserted that the City's claims were precluded by federal statutory compliance. Fifth, the District asserted justification.

The amended answer ends with these five defenses. The initial answer, but *not* the amended answer, however, further makes three counterclaims. First, the

---

2. The court expresses no opinion as to the validity of the contract between the parties but will assume, for the purposes of this ruling, that the parties indeed entered into a contract.

3. The FmHA is the now defunct predecessor agency of the USDA/Rural Development. The court, for consistency's sake, will refer to the agency as the FmHA because the contract in question references the agency as the Farmers' Home Administration, or FmHA.

District set forth a claim under 7 U.S.C. § 1926(b), asserting continuing violations and invasion and curtailment of the service area provided and made available to the District. Second, the District alleged a claim under 42 U.S.C. § 1983 for a pattern and practice of continuing and threatened violations of federally guaranteed rights, namely, the rights guaranteed by 7 U.S.C. § 1926(b). In addition, the District sought attorney's fees pursuant to 42 U.S.C. § 1988. And third, the District sought statutory compensation as provided by Iowa Code section 357A.21, which provides that "[a] water district organized under chapter 357, 357A, 499, or 504A shall be fairly compensated for losses resulting from annexation."

On July 31, 2001, the District filed a Motion For Summary Judgment in the Iowa District Court for Dickinson County. The Iowa court heard oral arguments on the motion on September 5, 2001, and, as of the date of this opinion, the motion is under consideration by the state court. Trial is scheduled in the state court matter for May of 2002.

### 2. The federal court action

On October 2, 2001, the District filed a complaint in this court against the City, alleging violations of 7 U.S.C. § 1926(b), for continuing violations and for invasion and curtailment of the service provided and made available to the District and seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. In its complaint, the District seeks the following relief:

> [T]he District, Clay Regional Water, requests that this Court (i) declare the rights and liabilities of the parties and render judgment in favor of the District for the City's violation of 7 U.S.C.

§ 1926(b), thereby declaring the respective boundaries of the parties pursuant thereto; (ii) enjoin the City from providing service to existing and potential current and future customers within the District's defined federal franchise; (iii) create, pursuant to 42 U.S.C. § 1983, a constructive trust over customers, revenues and facilities of the City within the District's state-law defined federal franchise boundaries, and for the transfer of wrongfully acquired customers, revenues and facilities from the City to the District; (iv) exercise its equity jurisdiction pursuant to the doctrine of en custodia legis for the facilities, customers, and revenue the subject of this action during the pendency of this litigation; (v) award the District attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2202, and tax costs pursuant to 28 U.S.C. § 1920; (vi) award pre- and post judgment interest; and (vii) grant such other and further relief, in law or in equity, which this honorable Court may find the District justly entitled.

Pltf.'s Complaint (Doc. No. 1).

In November of 2001, the City filed this Motion To Abstain From Jurisdiction. On December 26, 2001, the District filed a Motion For Summary Judgment on each of its claims against the City. The court has taken no action on this motion, having granted the City a lengthy extension of time in which to respond to the District's motion. The parties submitted their scheduling report on January 17, 2002 and indicated a trial readiness date of November 12, 2002. However, a trial date has yet to be set by this court. In January of 2002, the District moved to supplement its resistance to the City's motion to dismiss or stay, which this court granted on January 29, 2002.[4]

---

4. The additional information shows the City's proposed annexation plans, which the District

asserts are demonstrative of the continuing

## II. DISCUSSION

### A. The District Court's Virtually Unflagging Obligation

In this action, both parties urge the court to employ the *Colorado River* abstention doctrine as interpreted by the Eighth Circuit Court of Appeals. *Compare Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), *with United States Fidelity & Guaranty Co. v. Murphy Oil USA, Inc.,* 21 F.3d 259 (8th Cir.1994).

■ As a general rule, federal courts may not abstain merely to avoid duplication with concurrent state proceedings. *See, e.g., McClellan v. Carland,* 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762 (1910); *Stanton v. Embrey,* 93 U.S. 548, 554, 23 L.Ed. 983 (1877) ("[T]he pendency of a prior suit in another jurisdiction is not a bar ... even though the two suits are for the same cause of action."); *M'Kim v. Voorhies,* 11 U.S. (7 Cranch) 279, 3 L.Ed. 342 (1812); *Diggs v. Wolcott,* 8 U.S. (4 Cranch) 179, 2 L.Ed. 587 (1807). That is so because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236. In 1824, Chief Justice Marshall explained the weightiness of this obligation in *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1824):

> It is most true, that this court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should. The judiciary cannot, as the legislature may, avoid a measure, because it approaches the confines of the constitution.... With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it

be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.

*Id.* at 404. In fact, the only firmly entrenched exception to this general rule of requiring retention of jurisdiction is in cases involving real property. *See Donovan v. City of Dallas,* 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) ("[I]n cases where a court has custody of property, that is, proceedings in rem or quasi in rem ... the state or federal court having custody of such property has exclusive jurisdiction to proceed."); *accord Princess Lida v. Thompson,* 305 U.S. 456, 465–68, 59 S.Ct. 275, 83 L.Ed. 285 (1939) (same). However, despite this clear rule preventing duplicative proceedings in cases involving real property, no similar principle exists for other types of litigation.

### B. Exceptions To The General Rule

■ Nevertheless, the Court has recognized a narrow exception to a district court's obligation to exercise jurisdiction and has held that "exceptional circumstances" may justify abstention to avoid duplicative proceedings. *See Colorado River,* 424 U.S. at 818, 96 S.Ct. 1236. The Court in *Colorado River* listed four factors to be considered in determining whether to defer to the concurrent jurisdiction of a state court when parallel proceedings are pending in both state and federal court. *Id.* The Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), subsequently examined two additional factors that had not been discussed in *Colorado River.* Collectively, these six factors are known as the *Colorado River*-

and threatened violations of the District's federally protected rights.

*Moses H. Cone* factors, and they are as follows:

(1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*United States Fidelity & Guaranty Co. v. Murphy Oil USA, Inc.*, 21 F.3d 259, 263 (8th Cir.1994) (citing *Government Employees Ins. Co. v. Simon*, 917 F.2d 1144, 1148 (8th Cir.1990)); *accord Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 13–26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Employers Ins. of Wausau v. Missouri Elec. Works, Inc.*, 23 F.3d 1372, 1374 (8th Cir.1994); *Rivera–Puig v. Garcia–Rosario*, 983 F.2d 311, 320–21 (1st Cir.1992); *40235 Washington Street Corp. v. Lusardi*, 976 F.2d 587, 588 (9th Cir.1992); *American Bankers Ins. Co. of Fla. v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir.1990); *Noonan South, Inc. v. County of Volusia*, 841 F.2d 380, 381 (11th Cir.1988); *Fuller Co. v. Ramon I. Gil, Inc.*, 782 F.2d 306, 308 (1st Cir. 1986); *Bergeron v. Estate of Loeb*, 777 F.2d 792, 798 (1st Cir.1985). "[N]o one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is re-

quired." *Colorado River*, 424 U.S. at 818–19, 96 S.Ct. 1236.

In a more recent case, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995), the Supreme Court ruled that, in suits for declaratory judgment, federal courts have discretion whether to defer to duplicative state court proceedings. *Id.* at 285, 115 S.Ct. 2137. In *Wilton*, Seven Falls was the defendant in a state court action over the ownership and operation of several oil and gas properties. *Id.* at 279, 115 S.Ct. 2137. During the pendency of the state court action, Wilton, an insurance underwriter, had refused to provide a defense for Seven Falls. *Id.* After a three week trial, a jury entered judgment against Seven Falls and awarded damages in excess of $100 million. *Id.* Seven Falls sought indemnification from Wilton pursuant to several commercial liability insurance policies, but Wilton refused to indemnify Seven Falls. *Id.* at 280, 115 S.Ct. 2137.

Wilton sought a declaratory judgment in federal court pursuant to the Declaratory Judgment Act, seeking a ruling that it was not liable under the insurance policies. *Id.* Seven Falls subsequently filed an action in state court against Wilton, seeking indemnification. *Id.* Seven Falls then asked the federal court to dismiss or stay the action because of the pending state court action. *Id.* The district court granted the stay to avoid duplicative litigation, and both the Court of Appeals and the United States Supreme Court affirmed. *Id.* at 280–81, 115 S.Ct. 2137.

■ Although exceptional circumstances warranting *Colorado River* abstention were not present, the Court unanimously [5] concluded that the federal court had discretion to abstain under the federal Declaratory Judgment Act. *Id.* at 289, 115

---

5. Justice Breyer took no part in consideration or decision of the case.

S.Ct. 2137. The Court emphasized that the Act is written in discretionary terms, stating that federal court "may declare the rights and other legal relations of any interested parties seeking such declaration." *Id.* at 285, 115 S.Ct. 2137 (quoting 28 U.S.C. § 2201(a)). The Court noted that "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* Thus, the Court concluded that the *Colorado River* exceptional circumstances test was too restrictive of the district courts' discretion in the context of suits for declaratory judgment. *Id.* at 289, 115 S.Ct. 2137.

Reaffirming the *Brillhart* standard, which was announced in 1942, the *Wilton* Court ruled that the district court must consider the scope and nature of the pending state court proceeding to ascertain whether the issues in controversy between the parties to the federal action, not foreclosed under applicable substantive law, can be better settled by the state court. *See Wilton,* 515 U.S. at 282, 115 S.Ct. 2137; *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). If so, the district court must dismiss the federal action because "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where [a parallel] suit is pending in a state court." *Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173.

Accordingly, the *Wilton* Court ruled that district courts have "discretion to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Wilton,* 515 U.S. at 287, 115 S.Ct. 2137. In short, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288, 115 S.Ct. 2137. That is so because the statute "confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287, 115 S.Ct. 2137. The statutory grant of discretion, furthermore, necessarily meant that appellate review was by an abuse of discretion standard. *Id.* at 289, 115 S.Ct. 2137.

■ While *Wilton's* emphasis upon "practicality" and "wise judicial administration" makes clear that federal district courts are afforded greater discretion to stay or dismiss actions brought pursuant to the Declaratory Judgment Act and to defer to pending state court proceedings, the Court offered little guidance on the factors that should inform this discretion. The Eighth Circuit, in a pre-*Wilton* case, held that " 'the *Colorado River/Moses H. Cone* exceptional circumstances test applies to actions brought in federal court under the Declaratory Judgment Act, where diversity is the basis for federal jurisdiction, and abstention is considered on grounds that wise judicial administration favors deference to a concurrent state court action.' " *Murphy Oil,* 21 F.3d at 261 (quoting *Insurance Co. of Pa. v. Syntex Corp.,* 964 F.2d 829, 834 (8th Cir.1992)). While applying the *Colorado River–Moses H. Cone* factors to declaratory judgment actions in federal court on diversity jurisdiction, the Eighth Circuit also recognized that "declaring the test that should apply neither narrows the scope of the district court's discretion in applying those factors nor broadens the scope of review by this Court on appeal." *Id.* at 262. Thus, "although a district court should consider the *Colorado River–Moses H. Cone* factors before deciding to abstain from a declaratory judgment action under diversity jurisdiction where a parallel state court action is pending, we will reverse the decision ultimately made only if we determine, giving the district court the deference it is due,

that the court abused its considerable discretion in applying those factors." *Id.* at 263.

### C. Standard Of Discretion: Colorado River *or* Brillhart?

#### 1. Parallel proceedings

■ Before analyzing which standard of discretion applies to this case, a parallel state court proceeding is a necessary prerequisite to use of either the *Colorado River–Moses H. Cone* or *Brillhart* standards of abstention. *See Colorado River,* 424 U.S. at 817–18, 96 S.Ct. 1236; *Wilton,* 515 U.S. at 279, 115 S.Ct. 2137; *Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173; *accord Kirkbride v. Continental Cas. Co.,* 933 F.2d 729, 734 (9th Cir.1991) (finding *Colorado River* doctrine inapplicable because there was no concurrent or pending state court proceeding after case was removed to federal court); *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1287 (7th Cir.1988) ("As an initial requirement, the concurrent state and federal court proceedings must be parallel. If they are not, the *Colorado River* doctrine is inapplicable."); *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 31 (6th Cir.1984) ("A necessary requirèment for application of this *Colorado River* doctrine, however, is the presence of a parallel, state proceeding."). Thus, an exhaustive discussion of the applicable standard is unwarranted unless and until this court determines that the two actions in this matter are parallel, and the court turns now to this inquiry.

The District argues that the pending state and federal actions in this matter are not parallel for two reasons. First, the District asserts that "the state court lawsuit has been limited to one, simple question—whether the contract condition precedent has been met and, thus, whether the contract is valid or void." Plft's Brief, at 3. Second, the District contends the

actions are not parallel because "the state case has not yet been plead by either party to encompass a § 1926(b) argument." Plft's Brief, at 3. The District, however, misstates the record on both accounts.

While it is true that the sole issue on the District's state court *motion for summary judgment* is whether a condition precedent to performance has been satisfied, that certainly is not the sole issue before the state court. The City's petition seeks a declaration of the respective rights and duties of the parties under the contract. Dft's Exh. A (State Court Petition, at 2). Furthermore, the District clearly has contemplated invoking section 1926(b) as an affirmative defense in the state court action. Both the initial and amended answers to the City's state court action specifically cite 7 U.S.C. § 1926(b) and assert that "the 1990 Contract is void as against public policy, namely the Congressional policy embodied in 7 U.S.C. § 1926(b)." Dft's Exh. B (District's Initial Answer, at ¶ 5; District's Amended Answer, at ¶ 5). Furthermore, the District asserts the affirmative defense that "the City's common law claims are precluded by federal statutory compliance." Dft's Exh. B (District's Amended Answer, at ¶ 9). While not specifically citing section 1926(b), this federal statute is clearly the source of law claimed to prevent the enforcement of the alleged agreement between the parties.

■ "A 'suit is 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum[.]'" *Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1288 (7th Cir.1988) (quoting *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.,* 600 F.2d 1228, 1229 n. 1 (7th Cir.1979); and citing *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). In this case, the parties to the

state court and federal court actions are not merely substantially the same; they are identical. In addition, the issues in the actions are substantially the same. In the state court action, the City seeks a declaration of its rights and duties under the contract, which necessarily will obligate the state court to decide the 1926(b) question, assuming the City's claim survives the District's motion for summary judgment on the condition precedent issue. Similarly, a decision in this court regarding the rights of the parties under section 1926(b) will have a preclusive effect on the District's affirmative defenses in the state court action, which essentially mirror its federal court action. For these reasons, the two actions are "parallel" within the meaning of *Colorado River* and *Brillhart* abstention.

### 2. Essence of the District's complaint

Having concluded that the pending state and federal actions in this case are parallel, the court must return to the technical arcana of abstention jurisprudence. The parties urge this court to employ the *Colorado River–Moses H. Cone* factors to this case. At the same time, however, the City argues that the District's lawsuit is essentially a declaratory judgment action, even if the District seeks declaratory relief pursuant to both the Declaratory Judgment Act and section 1983. The Supreme Court explicitly stated that the exceptional circumstances test does not control a case brought pursuant to the Declaratory Judgment Act: "Distinct features of the Declaratory Judgment Act, we believe, justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone.*" *Wilton,* 515 U.S. at 285–87, 115 S.Ct. 2137; *accord Prudential Ins. Co. of America v. Doe,* 140 F.3d 785, 789 (8th Cir.1998) (recognizing

that *Federated Rural Electricity Insurance Co. v. Arkansas Elec. Cooperatives, Inc.,* 48 F.3d 294 (8th Cir.1995), did not survive *Wilton* ). Of course, this discretion is not unfettered. "[A] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Public Affairs Associates v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). Accordingly, "*Wilton* requires application of the *Brillhart* factors to [Declaratory Judgment Act suits]." *Prudential Ins. Co.,* 140 F.3d at 789.

In *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), the Supreme Court addressed the propriety of a federal district court's dismissal of a declaratory judgment action when similar litigation was pending in state court. In that case, subject matter jurisdiction was predicated upon diversity of citizenship. *Id.* at 493, 62 S.Ct. 1173. In upholding the dismissal, the Supreme Court "did not ... attempt a comprehensive enumeration of what in other cases may be revealed as relevant factors governing the exercise of a district court's discretion." *Id.* at 495, 62 S.Ct. 1173. However, the factors the Court relied on and which informed its decision in *Brillhart* include: "the scope of the pending state court proceeding," "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.*

Because different standards control the level of discretion afforded a district court's decision whether to defer to pending state court proceedings depending upon the nature of the federal court action, this court must first determine whether, despite the District's request for declaratory and equitable relief pursuant to section 1983, this action is primarily declaratory in

nature, warranting application of the broad discretionary standard of *Brillhart*. The Supreme Court has not yet addressed whether the same discretion should apply when a federal court is asked to issue a declaratory judgment under authority other than the Declaratory Judgment Act, having restricted the holding of *Brillhart* to litigation brought pursuant to the federal Declaratory Judgment Act. Other circuits have held that the *Brillhart* discretionary standard applies to actions seeking declaratory relief under the federal interpleader statute, 28 U.S.C. § 1335. *E.g.,* *State Auto Ins. Companies v. Summy,* 234 F.3d 131, 134 n. 3 (3d Cir.2000) (applying broad *Brillhart–Wilton* discretionary standard to action seeking declaratory relief pursuant to interpleader statute) (citing *NYLife Distributors, Inc. v. Adherence Group, Inc.,* 72 F.3d 371, 380 (3d Cir. 1995)); *NYLife Distributors, Inc. v. Adherence Group, Inc.,* 72 F.3d 371, 380 (3d Cir.1995) (same), *cert. denied,* 517 U.S. 1209, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996); *National Union Fire Ins. Co. of Pittsburgh v. Karp,* 108 F.3d 17 (2d Cir. 1997) (holding that federal courts in their discretion may dismiss or stay statutory interpleader actions in favor of ongoing state proceedings); *Equitable Life Assur. Soc. v. Porter–Englehart,* 867 F.2d 79 (1st Cir.1989) (same); *see also Q3 JMC, Inc. v. Mason Plastics, Inc.,* 2000 WL 1229567, at *1–*2 (M.D.N.C. June 20, 2000) (same); *Crommelin v. Woodfield,* 1998 WL 188101, at *3 (S.D.Fla. Mar.2, 1998) (same).

In *NYLife Distributors,* 72 F.3d at 371, the Second Circuit Court of Appeals ruled that "a motion to dismiss a federal statutory interpleader action during the pendency of a parallel state court proceeding is addressed to the sound discretion of the district court." *Id.* at 372. In that case, one of the defendants commenced a state court action *following* the commencement of the section 1335 interpleader action in federal court. *Id.* The defendant then requested that the district court defer to the state court proceedings. *Id.* The district court terminated the case, but the Second Circuit vacated the district court's judgment and remanded the case, ruling that "the court should have exercised its discretion to decide in which forum, federal or state, the unresolved dispute to the stake could be better determined." *Id.*

Guided by the Supreme Court's *Wilton* decision, the Second Circuit Court of Appeals recognized that *Wilton* was premised on " '[d]istinct features of the Declaratory Judgment Act,' which in the Court's view, 'justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exceptional circumstances' test of *Colorado River* and *Moses H. Cone.*' " *Id.* at 378 (quoting *Wilton,* 515 U.S. at 286, 115 S.Ct. 2137). The court opined that Supreme Court cases, beginning in 1942 with *Brillhart* and ending in 1995 with *Wilton,* stand for the proposition that "the exceptional circumstances test is not universal and will yield in cases where the statute grants a district court the authority to decide a matter." *Id.* at 379 (citing *Wilton,* 515 U.S. at 286, 115 S.Ct. 2137).

In its cogent analysis, the Second Circuit Court of Appeals focused on the nature of the federal interpleader statute. *See id.* at 374–75. Because the interpleader statute, both historically and under the statute, is a suit in equity, "[a] federal interpleader court . . ., by the nature of its jurisdiction proceeds with broad discretion." *Id.* at 380 (citing *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944) (stating "the essence of equity jurisdiction has been the power of the chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it."); *Meredith v. City of Winter Haven,* 320 U.S. 228, 235, 64 S.Ct.

7, 88 L.Ed. 9 (1943) (stating "an appeal to the equity jurisdiction conferred on [the] federal courts is an appeal to the sound discretion which guides the determinations of courts of equity.")). In addition, the court looked to the text, structure, purpose, and legislative history of the interpleader act and found that, collectively, they demonstrated a congressional grant of discretion to federal interpleader courts. *See id.* at 381. Notably, the court observed that "it has long been recognized that the interpleader statute is remedial, aimed at assisting a party who fears the vexation of defending multiple claims to a fund or property under his control by providing him the opportunity to satisfy his obligation in a single proceeding." *Id.* at 381–82 (citing *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967)). For these reasons, the Court of Appeals ultimately concluded that, like the Declaratory Judgment Act, "the discretionary standard enunciated in *Brillhart* governs a district court's decision to dismiss an action commenced under the interpleader statute during the pendency of parallel state court proceedings." *Id.* at 382.

While it is clear the *Brillhart* discretionary standard would apply to the City's motion to dismiss or stay the District's action brought pursuant to the Declaratory Judgment Act, the standard to be applied to the District's other claims is murkier. In its complaint, the District seeks the following relief: a declaration of rights and liabilities of the parties pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.;* an injunction against the City from providing water service to areas

within the District's alleged service area, presumably pursuant to both 28 U.S.C. § 2202 and 42 U.S.C. § 1983; the creation of a constructive trust pursuant to 42 U.S.C. § 1983; and pursuant to the doctrine of *en custodia legis* for the facilities, customers, and revenue that are the subject of this action during the pendency of this litigation.[6] Thus, the three bases of the relief sought by the District are (1) the Declaratory Judgment Act; (2) section 1983; and (3) the court's equity jurisdiction.

As previously stated, the Supreme Court has ruled that actions brought under the Declaratory Judgment Act are subject to the more relaxed *Brillhart* standard. *See Brillhart*, 316 U.S. at 495, 62 S.Ct. 1173; *Wilton*, 515 U.S. at 282, 115 S.Ct. 2137. Informed by the analyses of *Brillhart*, *Wilton*, and *NYLife Distributors*, section 1983 is somewhat analogous to equitable statutes, such as the Declaratory Judgment Act and the interpleader statute, at least with respect to how the District has invoked its power in this case. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

---

6. The District also requests that this court "(v) award the District attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2202, and tax costs pursuant to 28 U.S.C. § 1920; (vi) award pre- and post judgment interest; and (vii) grant such other and further relief, in law or in equity, which

this honorable Court may find the District justly entitled." Pltf's Complaint (Doc. No. 1). Because this relief is all predicated upon a finding of a violation of federal rights, they do not independently confer upon this court federal question jurisdiction, and, therefore, do not enter into the calculus of this ruling.

42 U.S.C. § 1983. Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 685, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). On its own, section 1983 provides no substantive rights. *Chapman v. Houston Welfare Rights Org.* 441 U.S. 600, 617, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). "One cannot go into court and claim 'a violation of § 1983,' for § 1983 by itself does not protect anyone against anything, but simply provides a remedy." *Id.* at 600, 99 S.Ct. 1905. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver,* 510 U.S. 266, 270, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (per Chief Justice Rehnquist, with three Justices joining, two Justices concurring and two Justices concurring in judgment) (quoting *Baker v. McCollan,* 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)); *accord Maine v. Thiboutot,* 448 U.S. 1, 3, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (discussing remedial nature of § 1983 and stating, "[c]onstitution and laws" means that § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution).

Thus, while section 1983 bestows upon courts a well-stocked arsenal of remedial weapons, it does not in and of itself create any rights. In this regard, it is a remedial statute, akin to the Declaratory Judgment Act and the interpleader statute. The court emphasizes that this analogy is a far cry from belittling the importance of section 1983; indeed, section 1983 places the power and the responsibility of protecting federally guaranteed rights in the hands of the courts—a task this court does not take lightly. Ordinarily, the "unflagging obligation" of the federal courts to exercise the jurisdiction given them "is particularly weighty when those seeking a hearing in federal court are asserting ... their right to relief under 42 U.S.C. § 1983." *Tovar v. Billmeyer,* 609 F.2d 1291, 1293 (9th Cir.1980); *accord Signad, Inc. v. City of Sugar Land,* 753 F.2d 1338, 1340 (5th Cir. 1985) ("Application of the test enunciated in *Colorado River* ... leads us to conclude that abstention was improper here. Our decision is all the more compelling inasmuch as this is a section 1983 claim in which *Colorado River* abstention is urged; and we see none of the exceptional circumstances justifying abstention.").

There are, however, compelling reasons to apply the *Brillhart* abstention standard to the particular facts of this case. Primary among those reasons is the equitable nature of the relief sought by the District. *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 734, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (Kennedy, J., concurring) ("The traditional role of discretion in the exercise of equity jurisdiction makes abstention easiest to justify in cases where equitable relief is sought...."). To the extent the court is asked to exercise its equitable powers in fashioning relief, that power is purely discretionary. *Cf. Mathieu v. Gopher News Co.,* 273 F.3d 769, 778 (8th Cir.2001) (" 'In making a front pay award, the district court is not free to reject or contradict findings by the jury on issues that were properly submitted to the jury,' although it 'retains its discretion to consider all the circumstances in th[e] case when it determines what equitable relief may be appropriate.' ") (quoting *Newhouse v. McCormick & Co.,* 110 F.3d 635, 641 (8th Cir.1997), which in turn cites *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1101 (8th Cir.1982)); *Lincoln Benefit Life Co. v. Edwards,* 243 F.3d 457, 461 (8th Cir.2001) (reviewing district court's denial of equitable relief for abuse of discretion) (citing *Foy v. Klapmeier,* 992 F.2d 774, 779 (8th Cir.1993)); *Belk v. City of Eldon,* 228 F.3d 872, 883 (8th Cir.2000) (" 'The calculation

of front pay, which is necessarily uncertain, *is a matter of equitable relief within the district court's sound discretion.*'") (emphasis added) (quoting *Hukkanen v. International Union of Operating Eng'rs,* 3 F.3d 281, 286 (8th Cir.1993)). In fact, the Supreme Court recently observed that, despite a federal court's obligation to adjudicate claims authorized by Congress, "it has long been established that a federal court has the authority to decline to exercise its jurisdiction when it 'is asked to employ its historic powers as a court of equity.'" *Quackenbush,* 517 U.S. at 717, 116 S.Ct. 1712 (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 120, 102 S.Ct. 177, 70 L.Ed.2d 271 (1981) (Brennan, J., concurring)).

In *Quackenbush,* the Supreme Court made clear that "federal courts have the power to dismiss or remand based on abstention principles only where the relief sought is equitable or otherwise discretionary." *Id.* at 731, 116 S.Ct. 1712. Moreover, the Court observed that "in cases where the relief sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also, in otherwise appropriate circumstances, decline to exercise jurisdiction altogether by either dismissing the suit or remanding it to state court." *Id.* at 721, 116 S.Ct. 1712. The issues in *Quackenbush* were "whether an abstention-based remand order is appealable as a final order ... and whether the abstention doctrine first recognized in *Burford v. Sun Oil Co.* can be applied in a common-law suit for damages." *Id.* at 708, 116 S.Ct. 1712 (internal citation omitted).

▮▮▮ While the issues in *Quackenbush* are not the issues in this case, *Quackenbush* is relevant to this motion to dismiss or stay because it instructs that "the authority of a federal court to abstain from exercising its jurisdiction extends to all cases in which the court has discretion to grant or deny relief." *Id.* at 718, 116 S.Ct. 1712 (citing *New Orleans Public Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 359, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*NOPSI* ), which held that mandate of federal jurisdiction "does not eliminate ... the federal courts' discretion in determining whether to grant certain types of relief"). This is true because the federal courts' historic equitable powers antedated any congressional statutes conferring jurisdiction upon federal courts; consequently, statutes conferring federal jurisdiction do not eliminate the courts' "discretion in determining whether to grant certain types of relief—a discretion that was part of the common-law background against which the statutes conferring jurisdiction were enacted." *NOSPI,* 491 U.S. at 359, 109 S.Ct. 2506. Here, the court could find a violation of the District's water rights under section 1926(b), vis a vis section 1983; yet the court would be totally within its discretion to deny the District's request to create a constructive trust, as well as the *en custodia legis* relief sought. Thus, despite the fact the District seeks relief pursuant to section 1983 and the doctrine of *en custodia legis,* the court could rightfully dismiss this action or issue a stay order if the circumstances warranted abstention, because the relief sought is purely equitable.

Nevertheless, recognizing this court's authority to abstain is a far cry from ascertaining the applicable standard by which to determine whether a dismissal or stay is appropriate in this case. However, the *Quackenbush* decision is instructive because it makes a clear distinction between suits seeking equitable and, consequently, discretionary relief, and those seeking to recover money damages. There is little discussion of the application of *Colorado River* or *Brillhart* to section 1983 causes of action in the caselaw of this

circuit, or any other circuit for that matter. *E.g., Yamaha Motor Corp., U.S.A. v. Stroud,* 179 F.3d 598 (8th Cir.1999) (affirming district court's decision to abstain in § 1983 case seeking monetary damages in addition to injunctive relief under *Younger* principles); *Night Clubs, Inc. v. City of Fort Smith, Ark.,* 163 F.3d 475 (8th Cir. 1998) (same); *Allen v. Louisiana State Board of Dentistry,* 835 F.2d 100, 104–05 (5th Cir.1988) (holding that *Younger* abstention applies only to claims for injunctive and declaratory relief, but that *Colorado River* abstention is applicable to § 1983 damages claim); *Forehand v. First Alabama Bank,* 727 F.2d 1033, 1036 (11th Cir.1984) (applying *Colorado River* abstention test to § 1983 cause of action where complaint did not request any injunction, declaratory judgment or other similar remedial relief, but merely damages, and stating "Congress has deliberately afforded the section 1983 plaintiff an alternative federal forum. It is not for the courts to withdraw that jurisdiction which Congress has expressly granted under section 1983 where such a withdrawal is contrary to the purpose of Congress in extending that alternative forum."); *City of Sugar Land,* 753 F.2d at 1340 (applying *Colorado River* factors to § 1983 case where federal plaintiff asserted claims of conversion and taking without just compensation).

The above-cited cases applied the *Colorado River–Moses H. Cone* factors to the parties' motions to abstain. However, the plaintiffs in each of these cases appear to have sought money damages, as well as injunctive relief. The District's action is distinguishable from these cases because the District seeks purely equitable relief, which is by its very nature discretionary with the court. Therefore, these cases do not offer significant guidance in light of the *Quackenbush* Court's clear distinction between a district court's authority to abstain when litigants seek purely equitable

relief versus when they seek money damages.

In this regard, *Horne v. Firemen's Retirement System,* 69 F.3d 233 (8th Cir. 1995), guides this court's determination of what level of discretion should apply to the City's motion to dismiss or stay. In *Horne,* the federal plaintiff, Horne, was aggrieved by a mandatory retirement policy, Missouri statute, and St. Louis ordinance, which, collectively, provided that firefighters were to retire at age sixty. *Id.* at 235. Even though Horne had superior performance ratings, upon reaching sixty years of age, the Firemen's Retirement System voted to retire him. *Id.* Horne refused to retire and continued his employment as a fire marshal. *Id.*

Horne filed a charge with the Equal Opportunity Commission, but three days later, the City filed a preemptive action in state court, "seeking a declaratory judgment that the decision to retire Horne was 'lawful,' that it could proceed to remove him from the payroll without incurring any liability, and that the Missouri statute and ordinance at issue were valid and enforceable." *Id.* In anticipation of the City's lawsuit, Horne filed an age discrimination action in federal court against the Firemen's Retirement System and several City of St. Louis officials, pursuant to the federal Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* the same day that the City filed suit. *Id.* In his ADEA action, Horne sought "declaratory relief, an injunction to keep defendants from removing him from his job, emotional distress damages, and attorney's fees." *Id.* The district court, however, stayed, and later dismissed, Horne's action, finding exceptional circumstances existed, warranting a stay under *Colorado River.* *Id.* Horne appealed the stay and ultimate dismissal. *Id.*

After concluding that Horne had standing to sue even though the City had never taken official action to terminate him, the Eighth Circuit affirmed the district court's action in deferring the litigation to the state courts. *Id.* at 236–37. However, the Eighth Circuit Court of Appeals characterized Horne's federal lawsuit as "one for declaratory judgment; that is, for a declaration of his rights with respect to his continued employment with any additional relief based on the court's decree." *Id.* at 236. As such, the court ruled that the district court's discretion was guided by the *Brillhart* standard and that the exceptional circumstances test did not apply to Horne's federal suit. *Id.* In *Horne*, the Eighth Circuit reasoned that the district court's decision to defer to the pending state litigation was proper, primarily because the Missouri statute and St. Louis ordinance in question had never been challenged on constitutional grounds. *Id.* Furthermore, the district court noted that Horne's claims were under scrutiny by a Missouri court, and the Eighth Circuit concluded that the state court forum was adequate to protect Horne's rights. *Id.*

In determining that the more lenient *Brillhart* standard of discretion controlled the district court's decision in the *Horne* case, the Eighth Circuit Court of Appeals stated that " '[t]he essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action.' " *Id.* (quoting *United States v. Fisher–Otis Co.*, 496 F.2d 1146, 1151 (10th Cir.1974)). Because Horne suffered only threatened harm but no actual harm, the court concluded that

"the essence of his suit is one for declaratory judgment." *Id.*

██ Similar to *Horne*, the District's action is essentially one for a declaratory judgment, despite the section 1983 cause of action. The District's complaint asserted "actual and threatened municipal invasion and curtailment," but because the City is in state court seeking to establish its rights to provide water service to the area the District contends it has a right to service, it is logical to conclude that neither party has disturbed the status quo.[7] Further, despite the District's assertion of actual damages, its failure to seek them belies any argument that they have been sustained. In addition, despite the District's request for a constructive trust and attorney's fees, like *Horne*, those types of damages are purely within the court's discretion to award and do not somehow transmute the District's declaratory judgment action into one alleging that actual damages have been suffered. *See id.* (stating "[a]lthough Horne suffered a threatened harm, he has suffered no actual harm aside from unspecified emotional distress and attorney's fees"); *cf. Amerson v. Iowa*, 94 F.3d 510, 513 (8th Cir.1996) ("[A] plaintiff's incidental insertion of a general claim for damages will not suffice to prevent the dismissal of a § 1983 case where the damages sought cannot be awarded without first declaring unconstitutional a state court judgment on a matter firmly committed to the states.").

Informed by the *Quackenbush* and *Horne* decisions and guided by the *Wilton* Court's analysis, this court finds that, in light of the purely equitable nature of the relief sought and the potential, but not actual, harm alleged in the District's com-

---

7. The court recognizes that the City has gone forward with its annexation plans. Plft.'s Supp. Resistance (Doc. No. 34). However, there is no indication in the record that these plans have affected the District's present ability to provide water services to the annexed areas.

plaint, application of the *Brillhart* standard of discretion is the appropriate course of action in this case. *But see Village of Westfield v. Welch's,* 170 F.3d 116, 125 n. 5 (2d Cir.1999) (stating *Colorado River,* not *Brillhart,* standard applied because "the federal action did not seek purely declaratory relief."). In *Wilton,* the Court emphasized that its decision was based on the discretionary nature of the federal Declaratory Judgment Act. In this case, while section 1983 is certainly not a discretionary statute, it is remedial, and the relief sought by the District is in the nature of discretionary equitable relief. Therefore, the court will employ the *Brillhart* analysis to guide its discretion.

### D. Brillhart *Abstention*

"Noting the 'unique and substantial discretion' the Declaratory Judgment Act confers on federal courts, the United States Supreme Court has determined that a district court's decision to stay or dismiss a declaratory judgment action is governed by the discretionary standard set forth in *Brillhart.*" *Horne,* 69 F.3d at 236. As previously stated, the factors enumerated in *Brillhart* were never intended by the Court to be an exhaustive list. *See Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173. Instead, "[t]he *Brillhart* abstention doctrine operates to allow district courts to avoid indulging in 'gratuitous interference' where there is pending in state court another suit involving the same parties and 'presenting opportunity for ventilation of the same state law issues....'" *Wells' Dairy, Inc. v. Estate of J.P. Richardson, Jr.,* 89 F.Supp.2d 1042, 1058 (N.D.Iowa 2000) (quoting *Wilton,* 515 U.S. at 282–83, 115 S.Ct. 2137). However, while not formulating a bright line rule nor a "mechanical checklist," *Brillhart* does provide guidance to instruct the district court's exercise of discretion:

> The Court indicated, for example, that in deciding whether to enter a stay, a dis-

trict court should examine "the scope of the pending state court proceeding and the nature of defenses open there." [*Brillhart,* 316 U.S. at 495,. 62 S.Ct. 1173]. This inquiry, in turn, entails consideration of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc." *Id.* Other cases, the Court noted, might shed light on additional factors governing a district court's decision to stay or to dismiss a declaratory judgment action at the outset.

*Wilton,* 515 U.S. at 282–83, 115 S.Ct. 2137.

■ The scope of the state court action in this case depends in great deal upon the basis of the state court decision. For example, if the state court rules on summary judgment that a condition precedent has not been met and that this condition is sufficiently material to obviate performance, then the state court action ends there without ever reaching the section 1926(b) issue. However, if the court rules that there is a valid contract between the parties, the District will, as it set forth in its answer, raise the affirmative defense of its rights under section 1926(b).

The fact that the scope of the state court action cannot be ascertained with complete certainty at this moment, however, does not militate against abstention so much as it militates against a complete dismissal. To the extent the state court is called upon to determine the enforceability of the parties' alleged contract, the scope of the state court action will encompass the claims asserted by the District in the federal action. With that in mind, the overlapping issues embraced by both the state and federal actions weigh in favor of surrendering jurisdiction in this matter, because the potential for conflicting results

and the duplication of judicial efforts is very real. Judicial resources are scarce, and avoiding duplicative efforts and results is advantageous for both the state and federal systems. The most recent statistics released by the Federal Judicial Case-load Statistics underscore the importance of efficiency. For example, as the chart below illustrates, the Northern District of Iowa lead the nation's ninety-four district courts in the number of trials per judge last year.

**All Trials
By Authorized Judgeships
Top 15 Districts in US
Fiscal Year 2001**

While this court would not and could not refrain from exercising jurisdiction because of a heavy case load, the statistics are relevant only in that they demonstrate the importance of avoiding duplicative efforts in such a taxed judicial system.

The Eighth Circuit has recognized that efficiency can be a valid consideration in determining whether abstention is appropriate:

> Concerns of federalism and efficiency undergird the few limitations on the exercise of extant jurisdiction. These limitations invariably arise when parties undertake litigation in multiple fora. Because litigation ensues in more than one venue, a federal court's decision not to exercise its jurisdiction does not deprive the parties of a forum in which to air their grievances. The parties may resolve their differences elsewhere.

*Prudential Health Care Plan, Inc.*, 259 F.3d at 952–53. In this case, efficiency concerns weigh in favor of abstention because of the duplicative nature of the state and federal proceedings.

Furthermore, this case is strikingly similar in many respects to a case previously decided by this court, *Wells' Dairy*, 89 F.Supp.2d at 1042. In *Wells' Dairy*, this court declined to abstain from a declaratory relief action, where the federal declaratory plaintiff filed first, there was no indication of a "race to the courthouse," and the declaratory action presented no questions of state law. *Id.* at 1057–61. In that case, Wells' Dairy acquired the registered trademark on the use of the "Big Bopper" name in 1996. *Id.* at 1045. Wells' Dairy marketed an ice cream cookie sandwich under this name. *Id.* at 1046. The "Big Bopper" name, however, was shared with J.P. Richardson, Jr., a 1950s–era rock sensation. *Id.* After receiving a "cease and desist" letter from the Richardson Estate, Wells' Dairy filed a complaint in the Northern District of Iowa seeking a declaratory judgment that its use of the "Big Bopper" name did not violate the Richardson Estate's property rights. *Id.* at 1045. Subject matter jurisdiction was premised on the Lanham Act, 15 U.S.C. § 1061 *et seq. Id.* Sixteen days after Wells' Dairy filed suit in federal court, the Richardson Estate filed an action in Texas state court against Wells' Dairy based on a Texas state property statute. *Id.* The state court

action was pending at the time this court ruled that abstention was not warranted. *Id.*

In *Wells' Dairy*, this court emphasized that the presence of a federal question and the lack of any state law issues militated against abstention:

> There is also persuasive authority in the Second Circuit that abstention is disfavored in those cases where federal law supplies the rule of decision or where there are no parallel state court actions. For example, in *Dittmer v. County of Suffolk*, 146 F.3d 113 (2d Cir. 1998), the Second Circuit Court of Appeals acknowledged that where a plaintiff seeks a declaratory judgment, the district court has somewhat greater discretion to abstain. *Dittmer*, 146 F.3d at 118. The Second Circuit Court of Appeals reasoned that "[t]o avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions 'where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" *Id.* (quoting *Wilton*, 515 U.S. at 282, 115 S.Ct. 2137, 132 L.Ed.2d 214). The Second Circuit Court of Appeals held, however, that abstention would not be appropriate in *Dittmer* because none of the plaintiffs in the federal action were parties to the state action—i.e., there was no parallel state proceeding—and "because the present action involves issues of federal law only." *Id.; See also Wilton*, 515 U.S. at 290, 115 S.Ct. 2137, 132 L.Ed.2d 214 (explaining that abstention is more appropriate where state law issues predominate).

> Similarly, in *Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir.1996), the Second Circuit Court of Appeals found *Wilton* fundamentally distinct from the case before it because *Wilton* involved state law only whereas *Youell* involved novel issues of federal admiralty law. *Youell*, 74 F.3d

at 376. The Second Circuit Court of Appeals emphasized that the *Wilton* Court specifically declined to set forth the outer limits of a district court's discretion in cases, such as this, raising issues of federal law. *Id.* According to the Court, "[w]hile we loathe wasting judicial resources, it would be worse to cede federal review of an issue of federal law merely because [defendant] won the race to judgment in state court." *Id.* (quoting *Youell v. Exxon Corp.*, 48 F.3d 105, 114 (2d Cir.1995)). The question becomes simply in which pending action can the issues in controversy be better settled. *See McDonald's Corp. v. 2502 8th Ave. Corp.*, 920 F.Supp. 67, 69 (S.D.N.Y.1996).

*Id.* at 1059.

Here, too, the presence of a federal question permeates, to the exclusion of any state law grounds, the District's federal court action, and this fact weighs heavily against abstention. The Supreme Court stated in *Moses H. Cone* that "the presence of federal law issues must always be a major consideration weighing against surrender" of federal jurisdiction in deference to state court proceedings. *Moses H. Cone*, 460 U.S. at 26, 103 S.Ct. 927. Moreover, the Eighth Circuit has recently stated that "[t]he existence of jurisdiction usually compels its exercise." *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.*, 259 F.3d 949, 952 (8th Cir. 2001).

The Court in *Moses H. Cone* also noted, however, that "the source-of-law factor has less significance ... [when] the federal courts' jurisdiction to enforce [the statutory rights in question] is concurrent with that of the state courts." *Id.* In this case, Iowa courts would have concurrent jurisdiction over the District's section 1983 claims, asserting violations of section 1926(b), and there is no reason to question

the state courts' ability to effectively protect any federally protected rights that the District may raise. *See, e.g., Maine v. Thiboutot*, 448 U.S. 1, 3, n. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (finding concurrent jurisdiction over 42 U.S.C. § 1983 suits, despite federal procedural provisions in § 1988); *Felder v. Casey*, 487 U.S. 131, 147, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988) (stating "[a]lthough it is true that the principal remedy Congress chose to provide injured persons was immediate access to *federal* courts, it did not leave the protection of such rights exclusively in the hands of the federal judiciary, and instead conferred concurrent jurisdiction on state courts as well") (citing *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 506–07, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)) (internal citations omitted) (emphasis in original); *Martinez v. California*, 444 U.S. 277, 283 & n. 7, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (noting state court forum is always available to § 1983 plaintiff as a matter of right); *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir.1998) (observing that "[f]ederal district courts have original jurisdiction over section 1983 claims, notwithstanding the fact that they share such jurisdiction with the courts of the states in which they sit"). The source-of-law factor, therefore, has somewhat less significance here.

Furthermore, factors that were not present in *Wells' Dairy* must also be scrutinized, because their presence may justify a different result than that reached by this court in *Wells' Dairy*. First, the *Wells' Dairy* court relied on Second Circuit precedent for the proposition that "abstention is disfavored in those cases where federal law supplies the rule of the decision or where there are no parallel state court actions." *Wells' Dairy*, 89 F.Supp.2d at 1059 (citing *Dittmer v. County of Suffolk*, 146 F.3d 113 (2d Cir.1998); and *Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir.1996) (per curiam)). Other factors in *Dittmer*

and in *Youell*, however, counseled against abstention. In *Dittmer*, for example, none of the plaintiffs in the federal action were parties to the state action. *Dittmer*, 146 F.3d at 118. Thus, there was no parallel state litigation, which is a prerequisite to the ilk of abstention involved in both *Colorado River* and *Brillhart*. *See id.* In *Youell*, a per curiam decision decided on the heels of *Wilton*, novel issues of federal admiralty law imbued the state and federal actions. *Youell*, 74 F.3d at 376. Reasoning that " 'a federal question of first impression must all but demand that the federal court hear the case,' " the Second Circuit ruled that dismissal of the federal court action was an abuse of discretion under the circumstances. *Id.* (alteration provided by Second Circuit) (quoting *Youell v. Exxon Corp.*, 48 F.3d 105, 111–12 (2d Cir.1995) ( *Youell I*)).

In contrast, the lawsuits in this case are parallel, and the federal law injected into both the state and federal lawsuits is not a "novel question of federal law." Indeed, the District concedes that not only do federal courts routinely decide section 1926(b) cases, state courts, too, consistently hear 1926(b) claims. *See, e.g., Rural Water Sys. # 1 v. City of Sioux Center*, 967 F.Supp. 1483 (N.D.Iowa 1997) (section 1926(b) claim); *City of Harrisonville v. Public Water Supply · Dist. No. 9*, 49 S.W.3d 225 (Mo.Ct.App.2001) (same); *Starr County Water Control & Improvement Dist. No. 2 v. Rio Grande City*, 961 S.W.2d 607 (Tex.Ct.App.1997) (same); *City of Wetumpka v. Central Elmore Water Auth.*, 703 So.2d 907 (Ala.1997) (same).

Second, while not dispositive, the *Wells' Dairy* decision was in part guided by the fact Wells' Dairy filed the federal declaratory action before the Richardson Estate commenced the parallel state court action. *See id.* at 1060. The court held that the order of filing was "relevant," and cited an

Eighth Circuit opinion, which, in turn, stated that it was significant that the federal declaratory plaintiff was the first litigant to file suit. *Id.* (citing *Prudential Ins. Co.*, 140 F.3d at 788).

The opinion cited by this court in *Wells' Dairy* was *Prudential Insurance Co.* In *Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 788 (8th Cir.1998), the state court plaintiff filed his action after Prudential filed its declaratory judgment action in federal court. In his motion to dismiss, Doe, the state court plaintiff, argued that the federal court should abstain, because the issuance of a declaratory judgment sought by Prudential would have the effect of enjoining the state court action in violation of the Anti–Injunction Act, 28 U.S.C. § 2283.[8] *Id.* The *Prudential Insurance Co.* court rejected this contention, distinguishing the Eighth Circuit case from a case decided by the Fifth Circuit, *Texas Employers' Insurance Ass'n v. Jackson*, 862 F.2d 491 (5th Cir.1988) (en banc), primarily on the ground that, in *Prudential*, the federal declaratory action was filed before the concurrent state court action. *Prudential Ins. Co.*, 140 F.3d at 788.

In *Jackson*, an employee filed a lawsuit in state court after sustaining a work-related injury, which was covered by the Longshore and Harbor Workers' Compensation Act ("LHWCA"). *Jackson*, 862 F.2d at 493. The employee alleged bad faith denial of coverage and fraud against his employer's workers' compensation carrier. *Id.* Nearly a year after the state court suit was filed, the carrier filed an action in federal court, seeking to enjoin the employee's prosecution of his state law action on the ground his claims were preempted by the LHWCA and, further, seeking a declaratory judgment that his

claims were indeed preempted by the LHWCA. *Id.* at 495–96. The federal district court enjoined the state court proceedings and rendered the declaratory judgment that the employee's claims were preempted by the LHWCA. *Id.* at 493. A panel decision by the Fifth Circuit set aside the injunction as contrary to the Anti–Injunction Act, but affirmed the grant of declaratory relief. *Id.*

However, the Fifth Circuit en banc then reversed in part its panel decision and held that the grant of declaratory relief was improper, reasoning that the "district court ... lacked authority to issue the injunction by virtue of the Anti–Injunction Act, and that it and allied principles likewise prevented the declaratory relief sought and granted below." *Id.* at 494. The court explained that "[t]o allow declaratory relief in these circumstances would be to transform section 2283 [the Anti–Injunction statute] from a pillar of federalism reflecting the fundamental constitutional independence of the states and their courts, to an anachronistic, minor technicality, easily avoided by mere nomenclature or procedural sleight of hand." *Id.* at 491. Thus, the court ruled that if "an injunction would be barred by § 2283, this should also bar the issuance of a declaratory judgment that would have the same effect as an injunction." *Id.* at 506.

Moreover, "[b]efore a state court suit is filed, the [Anti–Injunction] Act has no application, and a federal court may enjoin parties from ever filing suit in state court." *Royal Ins. Co. of Am. v. Quinn–L Capital Corp.*, 3 F.3d 877, 884 (5th Cir.1993) (citing *Jackson*, 862 F.2d at 507, which in turn cites 17 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal

---

8. The Anti–Injunction Act, 28 U.S.C. § 2283 provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

PRACTICE AND PROCEDURE § 4222, at 506–07 (1981)). In this case, the District's declaratory action is similar to *Jackson* in this regard. Accordingly, the Fifth Circuit's reasoning that a declaratory judgment was improper because of its effect on the state court action does not translate into the context of cases, such as *Wells' Dairy* and *Prudential Insurance Co.*, where the declaratory judgment actions were filed first. In this case, the state action was commenced prior to the filing of the federal action, and if the court were, hypothetically, to grant the District declaratory relief, the state court would be bound by this determination; consequently, the City would, in essence, be enjoined from prosecuting its action in state court.

This glaring difference distinguishes this case from *Wells' Dairy*. The result in *Wells' Dairy* is logical, especially in light of principles of comity and federalism. More specifically, considerations of comity involve federal courts' respect for state courts, and not necessarily vice versa. In *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court defined the scope of the notions of "comity" and federalism:

> [It involves] a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.... [This concept represents] a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.

*Id.* at 44, 91 S.Ct. 746; *see also Planned Parenthood of Greater Iowa, Inc. v. Atchison*, 126 F.3d 1042, 1046 (8th Cir.1997); *Alleghany Corp. v. McCartney*, 896 F.2d 1138, 1142 (8th Cir.1990).

Thus, while federal courts must take special care to respect the parity of state courts under our system of federalism, there is no similar policy concern preventing state courts from interfering with the federal courts' jurisdiction because states simply lack the power to interfere with federal proceedings. *Cf. Donovan*, 377 U.S. at 412–13, 84 S.Ct. 1579 ("Early in the history of our country a general rule was established that state and federal courts would not interfere with or try to restrain each other's proceedings. That rule has continued substantially unchanged to this time.... While Congress has seen fit to authorize courts of the United States to restrain state-court proceedings in some special circumstances, it has in no way relaxed the old and well-established judicially declared rule that state courts are completely without power to restrain federal-court proceedings, in *in personam* actions...."); *Landry v. Latter*, 780 So.2d 450 (La.Ct.App.2000) ("Under the doctrine of comity, a state trial court with concurrent jurisdiction is only bound by the decision of a federal court when it is rendering a decision on the same issues that the federal court has already decided."); *Murtagh v. County of Berks*, 535 Pa. 50, 634 A.2d 179, 182 (1993) ("[A]bstention based on comity has no application when a section 1983 cause of action is brought in state courts because there is no risk of federal court interference."); 17 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2D § 4211, at 474 (2d ed.1988) (noting that general rule remains that "the jurisdiction of the federal courts 'cannot be limited or taken away by state statutes'") (quoting JUDGE DOBIE, FEDERAL JURISDICTION AND PROCEDURE 336

(1928). Instead, the state courts' respect for federal courts is governed by constitutional principles embodied in the Supremacy Clause of the United States Constitution. *Cf. In re Kansas City Star Co.,* 73 F.3d 191, 195 (8th Cir.1996) ("The Supreme Court has unequivocally stated that a 'state-law prohibition against compliance with [a federal] district court's decree cannot survive the command of the Supremacy Clause.'") (quoting *Washington v. Fishing Vessel Ass'n,* 443 U.S. 658, 695, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979), which in turn cites *Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958)); *Zajac v. Federal Land Bank of St. Paul,* 909 F.2d 1181, 1184 8th Cir.1990) (Arnold, J., concurring) ("The state courts are open to consider, and in fact are obligated under the Supremacy Clause to consider, assertions of federal statutory right, whether they arise as part of someone's claim or as part of a defense. The Anti–Injunction Act embodies a fundamental policy of federalism. It is a limitation on the jurisdiction of the federal courts, and one that should be scrupulously observed."). Therefore, a federal declaratory judgment action commenced *prior* to the commencement of a parallel state court proceeding would not implicate the same comity concerns as a declaratory judgment sought *after* the filing of a state court lawsuit, because at the time the federal court lawsuit was initiated, there was no danger of usurping the sovereign authority of the state.

Of course, this court noted in *Wells' Dairy* that, even when the federal action is filed first, the court must determine whether the declaratory action was "anticipatory" of the declaratory defendant's filing suit in state court. *Wells' Dairy,* 89 F.Supp.2d at 1060 (citing *Northwest Airlines, Inc. v. American Airlines, Inc.,* 989 F.2d 1002, 1007 (8th Cir.1993)), which stated that declaratory judgment actions may on occasion merit "a closer look" to endure

that the declaratory plaintiff is not motivated by forum-shopping concerns; *Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill,* 751 F.2d 801, 804 (5th Cir.1985); *Allendale Mutual Ins. Co. v. Bull Data Systems,* 10 F.3d 425, 431 (7th Cir.1993), which stated that "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural' plaintiff will normally be dismissed."; *St. Paul Fire & Marine Ins. Co. v. Runyon,* 53 F.3d 1167, 1170 (10th Cir.1995), which stated that a district court may choose to avoid a declaratory judgment action because the plaintiff is using the action for procedural fencing; *State Farm Fire & Cas. Co. v. Taylor,* 118 F.R.D. 426, 430 (M.D.N.C. 1988), which explained that a district court may consider the inequity of permitting a declaratory judgment plaintiff to gain precedence in time and forum by filing an anticipatory action. It seems apparent that this "closer look" is guided by principles of comity and federalism, because it assures that the federal declaratory action was not filed in an attempt to oust the state court of the opportunity to hear a case that would otherwise be properly before it.

In addition, the *Wells' Dairy* court concluded that Wells' Dairy's declaratory judgment action was not "anticipatory" and not "a 'race to the courthouse' situation in which only a 'preemptive strike' or procedural maneuvering provided Wells with the advantageous forum." *Wells' Dairy,* 89 F.Supp.2d at 1061. The District argues that the City's state court action was "anticipatory" of the District's federal action. Its argument is based on a series of interactions between the parties. Namely, the District briefed its section 1926(b) claims in written correspondence with the City on August 21, 1998 and on May 8, 2001. In these correspondences, the District asserts it made clear that it would resort to litigation in federal court

against the City to protect the District's interests. Pet.'s Brief, at 21. The District relies on the timing of the filing of the City's state court petition in support of the proposition that the City's commencement of state court proceedings was "anticipatory" of the federal action. In fact, the City filed suit in state court only fifteen days after receipt of the May 8, 2001 letter.

The City resists the District's contention that the City won a race to the courthouse. It asserts that the demands in both the August 21, 1998 and the May 8, 2001 correspondences embraced the District's objections to the City's annexation plans. Because the District threatened litigation but did not follow through in the 1998 letter, the City contends that there was no reason for it to treat the 2001 letter any differently. Thus, the City could not have won a race if it were the only participant.

It is clear to the court that the 1998 correspondence did threaten litigation. The letter states: "Clay Regional Water does not object to the annexation of the Ferguson land but does object and will litigate any attempt by the City of Spirit Lake to provide water service to Ferguson." Pltf.'s Exh. 8. The 2001 letter is less unequivocal: "My point in writing to you is that Clay Regional Water does not object to the annexation of the land but does object to any attempt by the City of Spirit Lake to provide water service to annexed land." Pltf.'s Exh. 8. There is no mention of resorting to litigation.[9] The court finds that this is not a "race to the courthouse" type of situation. While the threat of litigation was present, the possibility of a lawsuit had been brewing beneath the surface for years, and there is no reason why

the City should have treated the 2001 letter any differently than it treated the 1998 letter.

Furthermore, in the District's initial answer to the City's state court petition, the District counterclaimed, pursuant to section 1983, contending that the City's actions violated the District's federally guaranteed rights granted by section 1926(b). The counterclaim mirrors the grounds for relief asserted in the declaratory action, asserting "continuing violations (past and present), and for actual and threatened municipal invasion and curtailment, of the service provided and made available by the District." Def.'s Exh. B (District's Initial Answer, at ¶1); Complaint, at ¶4.01. However, the District amended its answer and eliminated its counterclaims. It then essentially brought those counterclaims in federal court under the guise of a declaratory judgment action. While it is equally likely this tactic was as much clever lawyering as it was an attempt to oust the state court of the opportunity to decide the City's lawsuit, there can be no doubt that the District went on a "shopping" spree.

 "Forum-shopping can in some cases justify ... abstention." *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 297 (9th Cir.1996); *accord BASF Corp. v. Symington*, 50 F.3d 555, 558 (8th Cir.1995) ("Declaratory judgment actions may on occasion merit 'a closer look' to ensure that the declaratory plaintiff is not motivated by forum-shopping concerns") (citing *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir.1993); *Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804

9. The court also observes that the District asserted in its brief that the City "was aware that the District would sue *in federal court*." Pltf.'s Brief, at 14 (emphasis added). While the record partially supports this assertion, the District's correspondence with the City at no time mentions a forum in which the District threatened to bring suit. This sort of misstatement of the record, while perhaps innocent and done with no intent to mislead the court, permeates the District's brief and is looked upon unfavorably.

(5th Cir.), *cert. denied,* 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 244 (1985)); *Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.,* 996 F.2d 774, 778 (5th Cir.1993) (listing "whether the plaintiff engaged in forum shopping in bringing the suit" as relevant factor in determining whether abstention is appropriate) (citing *Rowan Cos., Inc. v. Griffin,* 876 F.2d 26, 29 (5th Cir.1989)); *Travelers Indem. Co. v. Madonna,* 914 F.2d 1364, 1370–71 (9th Cir. 1990) (considering whether party opposing abstention has engaged in impermissible forum-shopping). The fact that the District originally brought its section 1983 claim in state court, only to dismiss it and raise it as a ground for declaratory relief in federal court—a judgment that would have significant impact on the parties' postures in state court—raises the specter of forum shopping.

In *International Ass'n of Entrepreneurs of America v. Angoff,* 58 F.3d 1266 (8th Cir.1995), the Eighth Circuit cautioned against the type of conduct in which the District has engaged here. While there is "no blanket prohibition on raising affirmative defenses by declaratory action," *BASF Corp.,* 50 F.3d at 558, "[t]he Declaratory Judgment Act is not to be used either for tactical advantage by litigants or to open a new portal of entry to federal courts for suits that are essentially defensive or reactive to state actions." *Angoff,* 58 F.3d at 1270.

In *Angoff,* the declaratory plaintiff sued in federal court only after his request for removal was denied as untimely. *Id.* This "sequence of events" alerted the Eighth Circuit to be "on guard" for improper use of the Declaratory Judgment Act. *Id.* Likewise, here, the District's federal action is a classic example of a "reactive" suit. Professor Erwin Chemerinsky described the precise type of duplicative litigation that is occurring in this case. He states:

Reactive suits [may also] arise in the context of federal question jurisdiction.... For instance, a defendant sued in state court on a state law cause of action cannot remove a case from state to federal court because of a defense based on federal law. Therefore, under some circumstances, the state court defendant might choose to initiate a federal court suit based on federal question jurisdiction against the state court plaintiff.

ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 14.1, at 814–15 (1999). The situation Professor Chemerinsky describes as "reactive" is a blueprint for the District's litigation strategy in this matter. The reactive nature of the District's suit weighs in favor of abstention and raises the concern that the District is utilizing the Declaratory Judgment Act merely as a device for procedural fencing. *See Angoff,* 58 F.3d at 1270.

Another distinguishing factor that differentiates this case from *Wells' Dairy* is the relative progress of the pending state court action. In *Wells' Dairy,* the state court lawsuit was filed after the federal declaratory action and had not advanced past the initial stages. *Wells' Dairy,* 89 F.Supp.2d at 1045. In this case, the state court heard the District's motion for summary judgment in September of 2001. Further, the case is scheduled for a May 8, 2002 trial in state court. The District argues that the trial date and the dispositive motion pending in this action are misleading. That is so, according to the District, because the sole issue on the summary judgment motion is whether a condition precedent has been satisfied and also because no formal discovery has taken place, making the May of 2002 trial unlikely.

While that may be so, the state court proceedings are significantly more advanced than is the federal action. In this

action, the District similarly filed a motion for summary judgment, but only after the City requested that this court abstain. The court has taken no action on the summary judgment motion, having granted the City an extension of time in which to respond, and no trial date is set. The relative progress of the pending state and federal actions weighs in favor of abstention.

■■■ When the above-mentioned factors are balanced, the scale tips decidedly in favor of abstention. This is true because the only factor weighing against abstention is the presence of a federal question, and its presence, indeed, weighs heavily against abstention. However, other factors, including the relative progress of the litigation, the reactive nature of the District's federal action, the state courts' ability to decide section 1926(b) issues, and the effect of declaratory relief on the City's legitimate choice of forum, which would undermine the state court's prerogative to decide the case before it, in balance, counsel in favor of abstention.[10] Under the circumstances of this case, the court finds that abstention is justified, if not warranted.[11]

---

**10.** Even if the court were to apply the *Colorado River* doctrine, as argued by the parties, the court would still have reached the same conclusion that abstention is appropriate under these circumstances. The six *Colorado River–Moses H. Cone* factors are as follows: (1) whether there is property over which one court has established jurisdiction; (2) whether the federal forum is inconvenient; (3) whether maintaining separate actions may result in piecemeal litigation; (4) whether one case has priority, especially in terms of relative progress; (5) whether state or federal law controls; and (6) whether the state forum is adequate to protect the federal plaintiff's rights. *United States Fidelity & Guaranty Co. v. Murphy Oil USA, Inc.,* 21 F.3d 259, 263 (8th Cir.1994).

The first two factors are inapposite here. There is no res over which a court has jurisdiction; rather, the parties dispute which entity is entitled to provide water service to an area. And, while the state court forum is clearly more convenient, there is nothing extraordinarily inconvenient regarding the federal forum, because both parties are Iowa citizens, incorporated within the Northern District of Iowa.

The third factor weighs in favor of abstention because the District's 1926(b) claims are an inseverable defense to the City's state contract action. The fourth factor, as discussed in the body of this order, also weighs in favor of abstention because the state court has heard a motion for summary judgment in this case, while the federal court has not taken any action.

The fifth factor, however, weighs against abstention. Nevertheless, as discussed in the body of this opinion, the federal law invoked by the District is one in which state courts have concurrent jurisdiction. Furthermore, even if the only fighting issue in the state court proceedings is the 1926(b) claims, federal law still only arises in the context of state contract law. The very impact of the federal issue is determined by state contract law because the 1926(b) issue arises in the context of a defense. Thus, the state court action presents both federal and state law.

The sixth factor also weighs in favor of abstention. The state forum is more than adequate to protect the federal plaintiff's rights.

**11.** As stated previously, the parties urged application of the *Colorado River* doctrine to the facts of the case. The fact that state court proceedings, which were initiated first, are still on-going raises the question of the applicability of the *Younger* abstention doctrine. As the Eighth Circuit Court of Appeals has explained:

> In *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court advanced the position that federal courts should refrain from interfering with pending state judicial proceedings absent extraordinary circumstances. Under *Younger,* abstention is warranted if the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges. *See Fuller v. Ulland,* 76 F.3d 957, 959 (8th Cir.1996).

■ Here, while the state court action may finally resolve the case, it is also possible that further federal proceedings may prove necessary. So long as a possibility of return to federal court remains, a stay rather than a dismissal is the preferred mode of abstention.[12] *See Wilton,* 515 U.S. at 288 n. 2, 115 S.Ct. 2137 (citing P. BATOR, ET AL., THE FEDERAL COURTS AND THE FEDERAL SYSTEM 1451, n. 9 (3d ed.1988)); *Capitol Indemn. Corp. v. Haverfield,* 218 F.3d 872, 875 n. 2 (8th Cir. 2000) (citing *Angoff,* 58 F.3d at 771); *Bob's Home Serv., Inc. v. Warren County,* 755 F.2d 625, 628 (8th Cir.1985); 17A WRIGHT

ET AL., *supra,* § 4247, at 136–38. The court, therefore, will stay this action.

## III. CONCLUSION

In sum, the court finds that the presence of federal law weighs heavily against the surrender of this case. However, because of the presence of several other factors, which in each instance favor abstention, the court will exercise its substantial discretion under the *Brillhart* analysis to stay the present action.

THEREFORE:

The present action is **stayed** pending disposition of the proceedings pending in

*Harmon v. City of Kansas City, Mo.,* 197 F.3d 321, 325 (8th Cir.1999), *cert. denied,* 529 U.S. 1038, 120 S.Ct. 1534, 146 L.Ed.2d 348 (2000).

"Abstention is proper if there is an ongoing state judicial proceeding, the proceeding implicates important state interests, there is an adequate opportunity in the state proceedings to raise constitutional challenges, and in the absence of 'bad faith, harassment, or other exceptional circumstances.'" *Yamaha Motor Corp., U.S.A. v. Stroud.,* 179 F.3d 598, 602 (8th Cir.1999). In this case, application of this doctrine would yield the same result as this court's *Brillhart* analysis, for the reasons identified throughout the body of this ruling. *See* discussion, *supra.*

Moreover, *Younger* abstention is constitutional, as opposed to *Brillhart* and *Colorado River* abstention, which evolved from prudential concerns. Thus, if the factors warranting *Younger* abstention are found, a district court must abstain. *See, e.g., Joseph A. ex rel. Corrine Wolfe v. Ingram,* 275 F.3d 1253 (10th Cir.2002) ("Once a court finds that the required conditions are present, abstention is mandatory.") (page references not yet available); *Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc.,* 259 F.3d 949, 952 (8th Cir.2001) (citing *Younger* for the proposition that it requires "abstention—in most instances—when federal jurisdiction is invoked to restrain state criminal proceedings"); *Amanatullah v. Colorado Bd. of Med. Exam'rs,* 187 F.3d 1160, 1163 (10th Cir.1999) ("*Younger* abstention is non-discretionary; it must be invoked once the three conditions are met,

absent extraordinary circumstances."); *Postscript Enterprises, Inc. v. Peach,* 878 F.2d 1114, 1116 (8th Cir.1989) ("Under the *Younger* abstention doctrine the federal courts must abstain from interfering with the efforts of states or local governments 'to protect the very interests which underlie [their] criminal laws and to obtain compliance with precisely the standards which are embodied in [their] criminal laws.'") (quoting *Huffman v. Pursue Ltd.,* 420 U.S. 592, 605, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)); *Luecke v. Mercantile Bank of Jonesboro,* 720 F.2d 15, 16–17 (8th Cir.1983) ("'Our Federalism' doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny, the doctrine being that a federal court must refrain from hearing constitutional challenges to state action when the federal action would intrude upon a state's right to enforce its laws in its own courts.").

12. The City also moved to strike unnecessary and inappropriate matter from the District's complaint. Specifically, the City argues that the complaint contains extraneous legal authority and conclusions, rather than a plain statement of the facts.

The court need not decide this matter at the present time. However, should this action continue in this federal court upon the lifting of the stay, the plaintiff would be well advised to file an amended complaint, presenting a short and plain statement establishing jurisdiction and the grounds for relief, devoid of extraneous legal argument and conclusions. *See* FED.R.CIV.P. 8(a), 12(f).

Iowa District Court, Dickinson County, *City of Spirit Lake, Iowa v. Clay Regional Water*, No. 21147.

**IT IS SO ORDERED.**